| | |
|---|---|
| 1 | Jeffrey L. Fazio (146043) (jlf@fazmiclaw.com)<br>Dina E. Micheletti (184141) (dem@fazmiclaw.com) |
| 2 | **FAZIO | MICHELETTI LLP**<br>1111 Broadway, Suite 400 |
| 3 | Oakland, CA  94607<br>T: 925-543-2555 |
| 4 | F: 925-369-0344 |
| 5 | Keliang (Clay) Zhu (305509) (czhu@dehengsv.com)<br>Andre Y. Bates (178170) (aybates@dehengsv.com) |
| 6 | Yi Yao (292563) (yyao@dehengsv.com)<br>**DEHENG LAW OFFICES, P.C.** |
| 7 | Silicon Valley Office<br>7901 Stoneridge Drive, Suite 208 |
| 8 | Pleasanton, CA 94588<br>T: 925-399-5856 |
| 9 | F: 925-397-1976 |
| 10 | *Attorneys for Plaintiff* |
| 11 | *Robert M. Becker, on behalf of himself*<br>*and all others similarly situated* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 15 | ROBERT M. BECKER, on behalf of himself and all others similarly situated, | No. _____ |
| 16 | Plaintiff, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| 17 | v. | |
| 18 | VOLVO CARS OF NORTH AMERICA, LLC,; VOLVO CAR USA, LLC, and DOES 1-10, inclusive, | **CLASS ACTION** |
| 19 | | **JURY TRIAL DEMANDED** |
| 20 | Defendants. | |



Plaintiff, Robert M. Becker, and all others similarly situated (collectively, "Plaintiff"), alleges as follows upon personal knowledge as to Plaintiff's own conduct and experience, and on information and belief as to all other matters based on an investigation by counsel, such that each allegation has evidentiary support or is likely to have evidentiary support upon further investigation and discovery:

**INTRODUCTION**

1. This action seeks to redress Defendants' knowing concealment of a latent, systemic safety defect inherent in 2020-2024 model-year Volvo XC40 Recharge electric vehicles (collectively, "Class Vehicles"). This core defect in the Powertrain Control System (the "Defect") stems from flaws in the vehicles' design, software, and hardware integration. The manifestations of this Defect include unexpected and dangerous vehicle behavior, such as **sudden unintended acceleration, surging, and lurching**, particularly during low-speed maneuvers, when shifting gears, or when operating with the One Pedal Drive ("OPD") system engaged. These issues significantly compromise vehicle safety and pose a substantial risk of accident, injury, and property damage.

2. Volvo knew, or was reckless in not knowing, of the Defect from sources including pre-release testing, early consumer complaints (including from its sister-vehicle, the Polestar 2, which shares the same underlying platform and components), dealership service reports, internal engineering assessments, and data from the National Highway Traffic Safety Administration ("NHTSA"). Despite this knowledge, Volvo failed to disclose the full scope and nature of the Defect to Plaintiff and proposed Class Members at the time of sale or lease; instead, Volvo actively concealed its existence and severity. Volvo's piecemeal and unduly narrow recalls were insufficient, serving only as partial remedies for certain symptoms while failing to cure the underlying systemic flaw, thus leaving the primary risks of surging and lurching unaddressed across the entire Class.

3. As a direct and proximate result of Volvo's deceptive and unlawful conduct, Plaintiff and proposed Class Members have suffered significant harm. They were deprived of the benefit of their bargain, having purchased or leased vehicles that are worth substantially less than the amount paid due to the undisclosed Defect. They have also incurred, or will incur, costs for attempted diagnosis and repair, experienced loss of use of their vehicles, and face diminished resale value.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between many members of the proposed class and Defendants.

5. This Court has personal jurisdiction over Defendants. Volvo conducts substantial business in California, and the wrongful conduct alleged herein, including decisions related to the design, manufacture, marketing, and sale of the Class Vehicles, and the concealment of the Defect, occurred in and/or had substantial effects in California.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, and a substantial part of the events, omissions, and harms giving rise to these claims occurred in this District.

**PARTIES**

7. Plaintiff Robert Becker is an individual citizen of California, residing in the Northern District of California. On or about September 13, 2024, Plaintiff leased a new 2024 Volvo XC40 Recharge. Plaintiff has personally experienced the Defect in his vehicle, including multiple instances of unexpected surging and lurching while operating the vehicle. At the time he leased his vehicle, Plaintiff was aware of and relied upon Volvo's written warranties, including its New Vehicle Limited Warranty, which he understood to promise that the vehicle would be free from defects in materials and workmanship. Within the first month of his lease, and well within the warranty period, Plaintiff presented his vehicle to an authorized Volvo dealership to diagnose and repair the Defect.

8. Defendant Volvo Cars of North America, LLC, is a Delaware limited liability company with its principal place of business in Mahwah, New Jersey. It is responsible for the importation, distribution, marketing, sales, and service of Volvo vehicles in the United States.

9. Defendant Volvo Car USA, LLC, is a Delaware limited liability company with its principal place of business in Mahwah, New Jersey. It is a subsidiary of Volvo Cars of North America, LLC, and is directly involved in the sale, leasing, and warranty administration of Volvo vehicles in the United States.



## FACTUAL ALLEGATIONS

### VOLVO'S MISLEADING PROMISES OF SAFETY

10. Volvo's reputation for safety is arguably its most significant brand asset, and it forms the bedrock of Volvo's promotion of its XC40 Recharge EVs. Volvo advertising and other corporate communications implicitly and explicitly draw on Volvo's decades-long focus on safety, emphasizing that "Volvo is known for producing safe, long-lasting vehicles."

11. Indeed, Volvo positions the XC40 Recharge not merely as an EV, but as a symbol of its broader commitment to safety and sustainability, integrating this message deeply into its brand narrative. When it introduced the XC40 Recharge in 2019, Volvo connected the company's historical emphasis on human safety with a new imperative for planetary safety, stating explicitly that "we have been a safety company since 1927 . . . yet our products have contributed to climate change making our planet less safe. . . . It's time to change . . . every new Volvo model will be electrified."

### THE CLASS VEHICLES AND THE POWERTRAIN CONTROL SYSTEM DEFECT

12. The Volvo XC40 Recharge is an all-electric compact SUV that Volvo markets as a safe, reliable, and technologically advanced vehicle. It is built on the Compact Modular Architecture (CMA) platform, co-developed by Volvo, and shares critical powertrain components and control systems with other vehicles, including the Polestar 2.

13. Contrary to Volvo's representations of safety and reliability, Plaintiff is informed and believes that Class Vehicles suffer from a latent Powertrain Control System defect that can cause the vehicle to behave erratically and dangerously. This systemic Defect is a constellation of potentially interconnected issues stemming from failures in software logic governing systems such as the One Pedal Drive (OPD), the Battery Energy Control Module (BECM), and the Vehicle Control Unit (VCU); vulnerabilities in hardware components like the Accelerator Pedal Sensor (APS) harness; and broader system integration challenges within the Compact Modular Architecture (CMA) platform. The core of this Defect is the system's fundamental inability to safely manage the powertrain when faced with minor hardware faults, software conflicts, or common operational scenarios, leading to a cascade of dangerous, unintended behaviors. The manifestations of this Defect include, without limitation, Class Vehicles unexpectedly accelerating or surging forward or

backward without or with minimal driver accelerator input. This often occurs when shifting gears (*e.g.*, from Park to Drive or Reverse), particularly on an incline or decline, at low speeds (*e.g.*, while parking), and when the OPD system is active. Also during low-speed maneuvers and at a standstill Class Vehicles suddenly and abruptly lurch and jump.

14. These dangerous behaviors can occur even when the driver's foot is on the brake pedal or not on the accelerator pedal. The issue is particularly pronounced when features like "Creep mode" or the automatic brake hold function interact with the Defect and/or the OPD system. The Defect is not a "normal operating characteristic" as Volvo has claimed to some customers, including Plaintiff, but a dangerous flaw in the vehicles' design, manufacturing, and/or software.

### VOLVO'S KNOWLEDGE AND CONCEALMENT OF THE DEFECT

15. Volvo knew or, at a minimum, was reckless in not knowing of the Powertrain Control System Defect throughout the Class Period, well before Plaintiff and proposed Class Members purchased or leased their Class Vehicles. Volvo's early and ongoing knowledge stems from numerous sources, demonstrating a clear pattern of awareness and subsequent concealment:

    a. **CMA Platform and Shared Component Development**: As a co-developer of the CMA platform and its core electrical architecture, Volvo's extensive internal design, testing, and validation processes should have revealed the propensities for the unintended and dangerous behaviors associated with the Defect.

    b. **Early Evidence of System Instability (BECM)**: The Polestar 2, which shares the CMA platform and critical components like the BECM with the XC40 Recharge, began production in December 2019. Early Polestar 2 vehicles experienced critical powertrain failures, including loss of propulsion, due to a software defect in the shared BECM. This knowledge of a critical defect in an identical, shared component in a sister vehicle put Volvo on direct notice of the powertrain control system's inherent instability.

    c. **Internal Data and Testing**: Volvo's pre-production testing, software development logs, and early engineering assessments would have further highlighted the Powertrain Control System Defect's manifestations.

d. **Early Consumer Complaints and Dealership Data**: Volvo received direct complaints from consumers and data from its dealership network—including warranty claims, repair orders, and technical assistance requests—detailing the Defect's manifestations shortly after launch. Indeed, Volvo's knowledge is further evidenced by statements from its own agents, such as a dealership service manager who, after diagnosing the issue, stated that the surging problem affects other XC40 Recharges as well.

e. **Insufficient Prior Recalls**: Volvo's eventual, limited recalls serve as admissions of its knowledge of the Powertrain Control System's inherent instability. These piecemeal and unduly narrow recalls failed to address the full scope or all root causes of the Defect across all Class Vehicles, further evidencing knowledge and an attempt to minimize the problem:

i. **NHTSA Recall 21V-109 (Volvo Recall R10078)**: Issued for certain 2021-2022 XC40 Recharge vehicles for a BECM software fault causing loss of propulsion. This recall addressed only one symptom of the system's instability in a limited subset of vehicles, failing to cure the underlying control logic flaws that cause the dangerous surging and lurching that define the Defect.

ii. **NHTSA Recall 22V-288 (Volvo Recall R10170)**: Issued for certain 2021-2022 XC40 BEV vehicles for potential water ingress in the accelerator pedal sensor (APS) harness. While addressing one hardware-specific trigger for unintended acceleration in a limited production range, it did not address the Defect in vehicles outside this range or those experiencing similar symptoms from other root causes, such as the CMA platform's flawed OPD control logic.

16. Despite possessing this detailed knowledge, Volvo engaged in a course of conduct to actively conceal and intentionally fail to disclose the Powertrain Control System Defect from Plaintiff and proposed Class Members. Volvo did so by:

a. Continuing to market and sell the Class Vehicles as safe, reliable, and high-quality, without disclosing the known, un-remedied risks of surging and lurching.

b. Failing to issue a comprehensive recall to address the Defect in all affected Class Vehicles.



c. Instructing dealerships and customer service representatives to deny the existence of the Defect or attribute its manifestations to "normal vehicle characteristics," driver error, or isolated incidents, even when internal data and widespread consumer complaints indicated a systemic problem.

d. Failing to provide a sufficient remedy, leaving many proposed Class Members with vehicles that continue to exhibit the dangerous surging and lurching behavior.

17. The Powertrain Control System Defect was and is a material fact. A reasonable consumer would consider the existence of a defect that causes unintended acceleration, surging, or lurching important when deciding whether to purchase or lease a vehicle or in determining the price they would be willing to pay. Plaintiff and proposed Class Members were unaware of the Defect. Had Volvo disclosed the Defect, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

**THE DEFECT POSES AN UNREASONABLE SAFETY RISK**

18. The Defect creates a significant and unreasonable risk of accidents and injuries to drivers, passengers, pedestrians, and other motorists. The unpredictable nature of Class Vehicles' acceleration can lead to collisions, particularly in common driving situations like parking, merging into traffic, or navigating intersections. Numerous owners have reported near-misses and actual collisions resulting from the Defect's manifestations.

**IMPACT ON PLAINTIFF AND PROPOSED CLASS MEMBERS**

19. As a direct and proximate result of Volvo's concealment and misrepresentations, Plaintiff and proposed Class Members have suffered ascertainable losses and damages, including, but not limited to, the following:

a. Overpayment for Their Class Vehicles: They paid a premium for vehicles they believed to be safe and reliable, but received vehicles with a dangerous latent defect.

b. Diminished Value: The Class Vehicles are worth significantly less than they would be without the Defect.

c. Out-of-Pocket Expenses: Costs incurred for attempted diagnosis, repairs, and alternative transportation.



d. Loss of Use: Inability to use their vehicles as intended due to safety concerns or while undergoing attempted repairs.

e. Future Costs: Anticipated costs to properly repair or replace components affected by the Defect, to the extent not covered by an adequate recall.

## CLASS-ACTION ALLEGATIONS

20. Plaintiff brings this action on behalf of himself and as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(5), on behalf of the following proposed Nationwide Class and Subclasses:

- **Nationwide Class**: All persons or entities in the United States who purchased or leased any 2020 through 2024 model-year Volvo XC40 Recharge electric vehicle.

- **California Subclass**: All persons or entities in California who purchased or leased any 2020 through 2024 model-year Volvo XC40 Recharge electric vehicle.

21. **Excluded** from the proposed Classes are Defendants, their officers, directors, employees, affiliates, and their immediate families; any entity in which Defendants have a controlling interest; the Judge to whom this case is assigned and their staff and immediate families; and any persons who timely and validly request exclusion.

22. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The proposed Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are tens of thousands of Class Vehicles in the United States. The precise number and identities of proposed Class Members are ascertainable from Volvo's records.

23. Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)): Questions of law and fact common to the Class predominate over any questions affecting only individual proposed Class Members. These common questions include, but are not limited to, the following:

a. Whether the Class Vehicles suffer from the common Powertrain Control System Defect as alleged herein;

b. Whether the Defect is material and poses an unreasonable safety risk;

c. What Volvo knew or should have known about the Defect, and the timing of such knowledge;



-7-
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

  d. Whether Volvo concealed the existence and nature of the Defect from Plaintiff and the Class;

  e. Whether Volvo had a duty to disclose the Defect;

  f. Whether Volvo's conduct constitutes fraudulent concealment;

  g. Whether Volvo violated the California Consumers Legal Remedies Act, the Unfair Competition Law, and/or the False Advertising Law with respect to the California Subclass;

  h. Whether Volvo was unjustly enriched as a result of its conduct;

  i. Whether Plaintiff and the Class are entitled to damages, including actual and punitive damages, and the proper measure of such damages; and

  j. Whether Plaintiff and the Class are entitled to equitable relief, including restitution and injunctive relief.

24. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of proposed Class Members. Plaintiff purchased a Class Vehicle suffering from the Defect and has been damaged by the same wrongful conduct by Volvo that harmed other proposed Class Members.

25. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of other proposed Class Members. Plaintiff has retained counsel competent and experienced in complex class action litigation, particularly in automotive-defect cases.

26. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual proposed Class Members, while significant to them, may not be large enough to justify the expense and burden of individual litigation. A class action will concentrate litigation in a single forum, promoting judicial economy and avoiding the risk of inconsistent or contradictory judgments.

27. **Injunctive and Declaratory Relief (Fed. R. Civ. P. 23(b)(2)):** Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole. This includes compelling Volvo to adequately address the Defect through an effective recall, repair, replacement, or buyback program, and to cease its deceptive practices.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Common Law Fraudulent Concealment)

### (On Behalf of the Nationwide Class)

28. Plaintiff incorporates by reference all preceding paragraphs.

29. Plaintiff brings this claim on behalf of himself and all proposed Class Members.

30. Volvo had a duty to disclose the Powertrain Control System Defect to Plaintiff and proposed Class Members because Volvo possessed superior and exclusive knowledge of the Defect, knew the Defect was material to reasonable consumers, and knew that Plaintiff and proposed Class Members were unaware of the Defect and could not reasonably discover it prior to purchase or lease. This duty arose from Volvo's exclusive knowledge of the ongoing safety risks associated with surging and lurching, its affirmative representations of vehicle safety and reliability, and its partial disclosures through limited recalls which failed to reveal the full extent and nature of the un-remedied Defect.

31. As detailed above, Volvo knowingly and intentionally concealed the ongoing risks of the Powertrain Control System Defect from Plaintiff and proposed Class Members. Volvo knew of the Defect from internal testing, early consumer complaints from XC40 and Polestar 2 owners, dealership repair orders, and its own internal reviews long before and during the period Class Vehicles were sold and leased.

32. Volvo intentionally concealed the un-remedied aspects of the Defect with the intent to induce Plaintiff and proposed Class Members to purchase or lease the Class Vehicles and to pay a higher price for them than they otherwise would have.

33. The existence of the Defect was a material fact that a reasonable consumer would have considered important in the decision to purchase or lease a Class Vehicle or in determining the price to pay.

34. Plaintiff and proposed Class Members were unaware of the Defect at the time of purchase or lease and justifiably relied on Volvo's silence as an implicit representation of the vehicles' safety and integrity. Had Volvo disclosed the ongoing risks of the Defect, Plaintiff and



-9-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  proposed Class Members would not have purchased their Class Vehicles, or would have paid
2  substantially less.
3      35.    As a direct and proximate result of Volvo's fraudulent concealment, Plaintiff and
4  proposed Class Members have suffered damages, including diminution in value, overpayment, and
5  other pecuniary losses in an amount to be proven at trial. Plaintiff also seeks punitive damages due
6  to Volvo's willful, wanton, and reckless disregard for safety and consumer rights.

**SECOND CLAIM FOR RELIEF**

**(Violation of the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, *et seq*.)**

**(On Behalf of the California Subclass)**

10    36.    Plaintiff incorporates by reference all preceding paragraphs.

11    37.    Plaintiff brings this claim on behalf of himself and the California Subclass. Class Vehicles are "goods" under Cal. Civ. Code § 1761(a), Plaintiff and California Subclass Members are "consumers" under Cal. Civ. Code § 1761(d), and Defendants are "persons" under Cal. Civ. Code § 1761(c).

15    38.    Volvo violated the CLRA by engaging in the following unfair or deceptive acts or practices in transactions intended to result or which resulted in the sale or lease of goods to consumers:

18        a.    Representing that the Class Vehicles had characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5))—specifically, representing them as safe and reliable when they possess the dangerous, un-remedied Powertrain Control System Defect that causes surging and lurching;

22        b.    Representing that the Class Vehicles were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7))—specifically, of a lower standard, quality, and grade due to the undisclosed Defect;

25        c.    Advertising goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))—specifically, by advertising safe and reliable vehicles while concealing the ongoing risks of the Defect; and

d.    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve (Cal. Civ. Code § 1770(a)(14))—by failing to disclose the Defect, Volvo misrepresented the true nature of the vehicles and the consumers' rights to a defect-free product.

39.    Volvo engaged in these practices by marketing, selling, and leasing Class Vehicles with the undisclosed Powertrain Control System Defect, thereby misrepresenting their safety, reliability, and quality in light of the un-remedied surging and lurching dangers.

40.    Plaintiff and proposed Class Members suffered damages as a direct and proximate result of Volvo's CLRA violations because they would not have purchased or leased their Class Vehicles, or would have paid substantially less for them, had they known the true facts concealed by Volvo.

41.    On or about April 28, 2025, Plaintiff, on behalf of himself and all proposed Class Members, provided Volvo with written notice of its violations of the CLRA, detailing the specific violations and demanding that Volvo correct, repair, replace, or otherwise rectify the goods and practices alleged to be in violation of § 1770.

42.    Should Volvo fail to provide an adequate and appropriate remedy within 30 days of that notice, Plaintiff will amend this Complaint to seek compensatory and punitive damages pursuant to Cal. Civ. Code § 1780(a). At present, Plaintiff, on behalf of himself and proposed Class Members, seeks restitution, injunctive relief, attorneys' fees, and costs, and any other relief the Court deems proper under Cal. Civ. Code § 1780.

### THIRD CLAIM FOR RELIEF

**(Violation of the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq*.)**

**(On Behalf of the California Subclass)**

43.    Plaintiff incorporates by reference all preceding paragraphs.

44.    Plaintiff brings this claim on behalf of himself and the California Subclass.

45.    Volvo's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business acts and practices under Cal. Bus. & Prof. Code § 17200.



-11-

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

46. **Unlawful Prong:** Volvo's conduct was "unlawful" because it violated, *inter alia*, the CLRA (as alleged above) and constituted common law fraudulent concealment.

47. **Unfair Prong:** Volvo's conduct was "unfair" because its practice of concealing the known Powertrain Control System Defect offends established public policy promoting vehicle safety and consumer protection. The harm to consumers from this safety defect and the economic losses significantly outweighs any purported utility of Volvo's conduct. The conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

48. **Fraudulent Prong:** Volvo's conduct was "fraudulent" because it was likely to deceive, and did deceive, reasonable consumers, including Plaintiff and proposed Class Members. Volvo's concealment of the Defect, while continuing to market the Class Vehicles as safe and reliable, would likely mislead a reasonable consumer.

49. As a direct and proximate result of Volvo's violations of the UCL, Plaintiff and proposed Class Members have suffered injury in fact and lost money or property, including the purchase or lease price paid for defective vehicles or the overpayment for such vehicles due to the undisclosed Defect.

50. Plaintiff, on behalf of himself and proposed Class Members, seeks restitution of all money or property wrongfully obtained by Volvo through such unfair competition and an injunction prohibiting Volvo from continuing these unlawful, unfair, and fraudulent practices.

## FOURTH CLAIM FOR RELIEF

**(Violation of the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500, *et seq*.)**

**(On Behalf of the California Subclass)**

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Plaintiff brings this claim on behalf of himself and the California Subclass.

53. Volvo, in connection with the sale and lease of Class Vehicles, disseminated untrue and misleading statements to Plaintiff and proposed Class Members.

54. Specifically, Volvo advertised, represented, and marketed the Class Vehicles as safe, reliable, of high quality, and possessing certain performance characteristics, through various channels including national advertising campaigns, owner's manuals, website content, and

1  dealership materials. These representations were false and misleading because Volvo failed to
2  disclose, and actively concealed, the existence of the Powertrain Control System Defect which
3  renders the vehicles unsafe, unreliable, and not of the quality represented, particularly in light of the
4  ongoing and un-remedied risks of surging and lurching.

55.  Volvo knew, or in the exercise of reasonable care should have known, that its representations were untrue or misleading at the time they were made, given its internal knowledge of the Defect.

56.  As a direct and proximate result of Volvo's false advertising, Plaintiff and proposed Class Members have suffered injury in fact and lost money or property, including the purchase or lease price paid or the overpayment for vehicles that did not conform to the advertised representations.

57.  Plaintiff, on behalf of himself and proposed Class Members, seeks restitution of all money or property obtained by Volvo through such false advertising and an injunction prohibiting Volvo from continuing these unlawful practices.

**FIFTH CLAIM FOR RELIEF**

**(Unjust Enrichment)**

**(On Behalf of the Nationwide Class)**

58.  Plaintiff incorporates by reference all preceding paragraphs.

59.  Plaintiff brings this claim on behalf of himself and all proposed Class Members.

60.  By its wrongful acts and omissions, including its knowing concealment of the Powertrain Control System Defect and its misrepresentations regarding the quality and safety of the Class Vehicles, Volvo knowingly received and retained benefits from Plaintiff and proposed Class Members. These benefits include the full purchase or lease payments for vehicles that were defective and worth less than the amount paid.

61.  Volvo knew of and appreciated the benefits it wrongfully received from Plaintiff and proposed Class Members, as it profited from sales that would not have occurred, or would have occurred at lower prices, had the Defect been disclosed.



-13-
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

62. It is inequitable and unjust for Volvo to retain these benefits under the circumstances where Plaintiff and proposed Class Members paid for safe and reliable vehicles but received defective vehicles with undisclosed safety risks and diminished value.

63. Plaintiff and proposed Class Members are entitled to restitution from Volvo of all amounts by which Volvo has been unjustly enriched, in an amount to be proven at trial. This claim is pleaded in the alternative to the extent other legal remedies are deemed inadequate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter judgment in their favor and against Defendants, awarding the following relief:

A. An order certifying this action as a class action under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and his undersigned counsel as Class Counsel;

B. An award of actual, compensatory, consequential, and punitive damages in amounts to be proven at trial;

C. An order for restitution and disgorgement of all profits and unjust enrichment obtained by Defendants as a result of their wrongful conduct;

D. Injunctive relief, including but not limited to an order requiring Defendants to do the following: (i) adequately disclose the Powertrain Control System Defect to all proposed Class Members; (ii) recall and properly repair the Class Vehicles to cure the Defect at no cost to proposed Class Members, or offer a buyback or replacement option; (iii) and cease the deceptive advertising and marketing practices alleged herein;

E. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

F. An award of reasonable attorneys' fees and litigation costs; and

G. Such other and further relief as the Court may deem just and proper.



# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  June 26, 2025

FAZIO | MICHELETTI LLP

by      /s/ *Jeffrey L. Fazio*

Jeffrey L. Fazio (146043)
Dina E. Micheletti (184141)
**FAZIO | MICHELETTI LLP**
1111 Broadway, Suite 400
Oakland, CA 94607
T: 925-543-2555
F: 925-369-0344

Keliang (Clay) Zhu (305509)
Andre Y. Bates (178170)
Yi Yao (292563)
**DEHENG LAW OFFICES, P.C.**
Silicon Valley Office
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
T: 925-399-5856
F: 925-397-1976

*Attorneys for Plaintiff*
*Robert M. Becker, on behalf of himself*
*and all others similarly situated*