1  Michael L. Mallow (SBN 188745)
   mmallow@shb.com
2  Colm A. Moran (SBN 202685)
   cmoran@shb.com
3  SHOOK, HARDY & BACON L.L.P.
   2121 Avenue of the Stars, Suite 1400
4  Los Angeles, CA 90067
   Telephone: (424) 285-8330
5  Facsimile: (424) 204-9093

6  Attorneys for Defendants
   VOLVO CAR NORTH AMERICA, LLC
7  *(erroneously sued as Volvo Cars of North*
   *America, LLC)* and VOLVO CAR USA LLC

8

9

10                 **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12

13  ROBERT M. BECKER, on behalf of himself      Case No.  3:25-cv-05331-MMC
    and all others similarly situated,
14                                              **DEFENDANTS VOLVO CAR NORTH**
15              Plaintiff,                       **AMERICA, LLC AND VOLVO CAR USA**
                                                **LLC'S NOTICE OF MOTION AND**
16              *v.*                             **MOTION TO DISMISS SECOND**
                                                **AMENDED COMPLAINT;**
17  VOLVO CARS OF NORTH AMERICA,                **MEMORANDUM OF POINTS AND**
    LLC, a Delaware limited liability company;  **AUTHORITIES**
18  VOLVO CAR USA, LLC, a Delaware limited
    liability company; and VOLVO CARS AB        Date: December 5, 2025
19  (publ.), a Swedish public limited company,  Time: 9:00 a.m.
                                                Courtroom: 7 – 19th Floor
20              Defendants.

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      Please take notice that on Friday, December 5, 2025, at 9:00 a.m., before the Honorable Maxine

4   M. Chesney, in Courtroom 7 – 19th Floor of the United States District Court, Northern District of

5   California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants VOLVO CAR

6   NORTH AMERICA, LLC, erroneously sued as Volvo Cars of North America, LLC, and VOLVO

7   CAR USA, LLC will and hereby do move the Court for an Order dismissing Plaintiff Robert M.

8   Becker's Second Amended Complaint.

9      Pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), Defendants seek an order

10  dismissing each of Plaintiff's claims for failure to state any claim upon which relief can be granted.

11  The Motion is based on this notice of motion, the supporting memorandum of points and authorities,

12  the pleadings on file in this case, and such arguments as the Court may allow at the time of hearing.

13

14   Dated: October 15, 2025                    SHOOK, HARDY & BACON L.L.P.

15

16                                             By: /s/ Colm A. Moran
                                                   Michael L. Mallow
17                                                 Colm A. Moran

18                                             Attorneys for Defendants
19                                             VOLVO CAR NORTH AMERICA, LLC
                                               and VOLVO CAR USA LLC

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ............................................................................................................ 5

I.      Becker Fails To State Any Fraud-Based Claim. ........................................... 5

      A.      Becker does not adequately allege a duty to disclose. ......................... 6

      B.      Becker does not adequately allege Defendants intentionally concealed or suppressed facts with the intent to defraud him. ................................... 11

II.     The Fraudulent Concealment Claim Is Barred By the Independent Tort Doctrine. ......... 12

III.    The Song-Beverly Act Claim Fails. ............................................................. 14

IV.     The Unjust Enrichment Claim Fails. ........................................................... 15

V.      The Equitable Relief Claims Fails. ............................................................. 15

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................5

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017)................................................................11

*Blissard v. FCA US LLC*,
   No. 2:18-cv-02765-JAK-JEMx, 2018 WL 6177295 (C.D. Cal. Nov. 9, 2018).........8

*Bruno v. U.S. Renal Care, Inc.*,
   No. 2:21-cv-04617-FLA, 2022 WL 2439525 (C.D. Cal. July 5, 2022)...................16

*Burdt v. Whirlpool Corp.*,
   No. C 15–01563 JSW, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) .......................8

*Cadena v. Customer Connexx LLC*,
   No. 2:18-cv-00233, 2018 WL 8130613 (D. Nev. Oct. 30, 2018)..............................6

*Calcagno v. Kipling Apparel Corp.*,
   No. 23-cv-2247-BAS-BLM, 2024 WL 3261205 (S.D. Cal. July 1, 2024)..............16

*Chiulli v. Am. Honda Motor Co.*,
   690 F. Supp. 3d 1038 (N.D. Cal. 2023) ......................................................6, 8, 17

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ...............................................................11

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ...........................................................................5, 16

*Deras v. Volkswagen Grp. of Am., Inc.*,
   No. 17-CV-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) .................10

*Emps. Ins. of Wausau v. Granite State Ins. Co.*,
   330 F.3d 1214 (9th Cir. 2003) .............................................................................7

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
   689 F. Supp. 3d 760 (C.D. Cal. 2023) .................................................................14

*Gonzalez v. Nissan N. Am., Inc.*,
   No. 2:24-cv-04101-SVW, 2024 WL 5369367 (C.D. Cal. Oct. 16, 2024) ...............7

*Grodzitsky v. Am. Honda Motor Co.*,
    No. 2:12–cv–1142–SVW–PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................8

*Hamm v. Mercedes-Benz USA, LLC*,
    No. 5:16-cv-03370-EJD, 2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ................................16

*Hovsepian v. Apple, Inc.*,
    2009 WL 5069144 (N.D.Cal. Dec. 17, 2009) ............................................................8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...................................................................5, 6

*Klaehn v. Cali Bamboo LLC*,
    No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022)....................................16

*Mandani v. Volkswagen Grp. of Am.*,
    No. 17-cv-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019).......................8

*McKinney v. Corsair Gaming, Inc.*,
    No. 22-cv-00312-CRB, 2022 WL 2820097 (N.D. Cal. July 19, 2022) ...................16

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. Mar. 5, 2018) ...........................................9

*Ottesen v. Hi-Tech Pharms., Inc.*,
    No. 19-CV-07271-JST, 2024 WL 5205539 (N.D. Cal. Dec. 23, 2024) ..................6

*In re Outlaw Lab., LLP*,
    463 F. Supp. 3d 1068, 1085 (S.D. Cal. 2020), *on reconsideration*, No. 3:18-CV-
    0840-GPC, 2020 WL 3840559 (S.D. Cal. July 8, 2020) ..............................6

*Sims v. Kia Motors Am., Inc.*,
    No. SACV-131791-AG, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014)...................6

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ...................................................10

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................15, 16

*Walters v. Gen. Motors LLC*,
    2024 WL 658984 (C.D. Cal. Jan. 9, 2024) ...............................................12

*Wheeler v. Ford Motor Co.*,
    No. 4:22-CV-00931-YGR, 2022 WL 19692038 (N.D. Cal. May 26, 2022).......................6, 11

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...........................................................10

**State Cases**

*Gardiner Solder Co. v. Supalloy Corp.*,
    232 Cal. App. 3d 1537 (Ct. App. 1991) ...................................................................15

*Gavaldon v. DaimlerChrysler Corp.*,
    32 Cal. 4th 1246 (2004) ...............................................................................14, 15

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    61 Cal. 4th 988 (2015) ........................................................................................15

*Hervey v. Mercedes-Benz USA, LLC*,
    No. B321367, 2025 WL 520308 (Cal. Ct. App. Feb. 18, 2025) ...............................7

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ........................................................................................13

*Metal Cladding, Inc. v. Brassey*,
    159 A.D.2d 958 (N.Y. App Div. 1990) ..................................................................15

*Music Acceptance Corp. v. Lofing*,
    32 Cal. App. 4th 610 (1995) ................................................................................14

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
    157 Cal. App. 4th 835 (2007), *as modified* (Dec. 26, 2007) ...............................11

*Randi W. v. Muroc Joint Unified Sch. Dist.*,
    14 Cal. 4th 1066 (1997), *as modified* (Feb. 26, 1997) .........................................11

*Rattagan v. Uber Techs., Inc.*,
    17 Cal. 5th 1 (2024) .........................................................................7, 8, 12, 13

*Santana v. FCA US, LLC*,
    56 Cal. App. 5th 334 (2020) ................................................................................14

**State Statutes**

Cal. Civ. Code § 1791.1(d) ......................................................................................14

Cal. Civ. Code § 1793.2(d) ......................................................................................14

Cal. Civ. Code § 1794 ..............................................................................................14

Cal. Civ. Code § 1794(b)(1) .....................................................................................14

Cal. Com. Code § 2711 ............................................................................................14

Cal. Com. Code § 2712 ............................................................................................14

Cal. Com. Code § 2713 ............................................................................................14

MOTION TO DISMISS SECOND AMENDED COMPLAINT

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................5, 6

Fed. R. Civ. P. 12(b)(6).................................................................................................4

MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiff Robert Becker brings this putative class action alleging 2019-2024 Volvo XC40 Recharge electric vehicles are defective because they may experience "uncommanded vehicle propulsion" (UVP). He claims that UVP events are caused by a Powertrain Control Defect sending an erroneous but internally consistent signal for acceleration. In light of the alleged defect, Becker asserts claims against Defendants Volvo Car North America, LLC, Volvo Car USA LLC, and Volvo Cars AB under California consumer protection statutes, along with claims for common law fraud and unjust enrichment. All of his claims fail as a matter of law.

*First*, Beckers fraud-based claims (Counts 1–4) fail because they are not alleged with the requisite particularity. Becker does not allege facts establishing Defendants owed him a duty to disclose information about the purported defect. Nor does he adequately allege Defendants possessed exclusive knowledge of the purported defect or an intent to defraud. *Second*, the fraudulent concealment claim is independently barred by the independent tort doctrine, which precludes tort liability under the circumstances—*e.g.*, where the harm alleged is the type of risk contemplated by the warranty. *Third*, Becker's implied warranty claim under the Song-Beverly Act (Count 5) fails because he did not timely revoke acceptance of the vehicle. *Fourth*, the unjust enrichment claim (Count 6) fails as Becker does not plausibly allege Defendants' retention of any benefit was unjust, particularly given he continues to use the vehicle. *Fifth*, the claims for equitable relief—including restitution, disgorgement, and injunctive relief—must be dismissed because Becker fails to allege legal remedies are inadequate.

Accordingly, the Court should dismiss the Second Amended Complaint in its entirety.

## STATEMENT OF FACTS

- **Alleged Powertrain Control Defect**

Plaintiff Robert Becker alleges he leased a new 2024 Volvo XC40 Recharge on September 13, 2024. SAC ¶ 10.  He claims to have experienced uncommanded vehicle propulsion ("UVP")—what he describes as "forward or rearward movement (including surging, lurching, or acceleration) initiated by the powertrain control system without a corresponding driver throttle command and contrary to driver intent."  *Id.* ¶ 1. Becker alleges his vehicle, and all other 2021–2024 Volvo XC40 Recharge

electric vehicles, suffer from a purported Powertrain Control Defect whereby the vehicle experiences this UVP at low speeds and gear transitions, and often in One-Pedal Drive function. *Id.* This allegedly "can impair or delay the intended brake-throttle override function." *Id.* ¶ 1; *Id.* ¶¶ 1, 40, 41.

Becker portrays the defect as a "latent Powertrain Control Defect that can cause the vehicle to behave erratically and dangerously" but nevertheless "often does not produce a DTC [diagnostic trouble code]" when tested. *Id.* ¶ 38. Under Becker's theory, there is a built-in weakness caused by problems in the Compact Modular Architecture ("CMA") platform. *Id.* ¶ 39. Specifically, due to an integration failure, "sub-threshold electrical anomalies or digital signal corruption … are misinterpreted by Class Vehicles' complex predictable software, particularly the 'One-Pedal Drive' logic." *Id.* Becker alleges the defect causes "an erroneous, but internally consistent 'driver intent' signal for acceleration, bypassing or significantly delaying the activation of … [the] Brake-Throttle Override ("BTO") system." *Id.* ¶ 41.

Becker alleges the purported defect creates a risk of collisions and injuries due to the unpredictable nature of acceleration. SAC ¶ 89. To support the claim, Becker relies on consumer reports of "near-misses" and "actual collisions," along with a safety recall. *Id.* A closer look at his pleadings shows that Becker identified just two collisions—both of which occurred after he leased his vehicle. *See* SAC ¶¶ 59–68, 87 (Sandvika Storsenter incident on September 23, 2024); *see also id.* ¶ 69 (Shannon Werre incident on December 9, 2024).

- **Plaintiff's Experience**

Becker alleges his vehicle experienced UVP the first day after leasing it on September 14, 2024. SAC ¶ 2, 29. According to Becker, the vehicle was on his downward-sloping driveway and moved forward about 20 inches after putting it in reverse, forcing him to immediately apply the brakes. *Id.* He thereafter learned that the vehicle would do the same, but in reverse, if parked on an incline when the transmission was moved from Park to Drive. *Id.* ¶ 29. Becker alleges he took the vehicle into Volvo Cars Burlingame, complaining of the issue and providing a YouTube link to a video he made showing the alleged issue. *Id.* ¶ 31. He alleges the dealership initially confirmed the UVP and noted that a new vehicle in stock also experienced UVP. *Id.* ¶ 32. But according to Becker, the dealership thereafter advised that his vehicle was working as designed, portrayed UVP as a normal characteristic,

and therefore did not attempt to make any repairs. *Id.* ¶ 33.

Shortly after taking the vehicle in for repair, Becker reported the same issue to the National Highway Transportation Safety Administration ("NHTSA"). SAC ¶ 34.

- **Defendant's Alleged Knowledge**

Becker alleges Defendants had exclusive and superior knowledge of the purported Powertrain Control Defect, *see* SAC ¶ 85, pointing to several sources:

- pre-release testing data, internal engineering assessments, dealership warranty submissions, and customer complaint logs, SAC ¶¶ 43, 48d, 48e;

- Defendants' remedial actions and internal investigations—*i.e.*, NHTSA Safety Recall 22V-288 for potential water ingress in the accelerator pedal sensor, and NHTSA Safety Recall 21V-109 addressing loss of propulsion, SAC ¶¶ 46, 48c;

- Defendants' deployment of "flight data records" allegedly "consistent with an investigation into transient, software-and-hardware-based anomaly," SAC ¶ 47, *see id.* at ¶ 55–58, 86;

- Defendants' internal design, testing, and validation process as a co-developer of the CMA platform and its electrical architecture, SAC ¶ 48a;

- loss of propulsion issues in a different vehicle (Polestar 2) that shares the CMA platform and other components, SAC ¶ 48b;

- the Sandvika Storsenter incident on September 23, 2024, which occurred several days *after* Becker leased his car, SAC ¶¶ 59–68, 87;

- "widespread" consumer reports, SAC ¶ 69–80, specifically one by Shannon Werre regarding an incident on December 9, 2024, *after* Becker leased his vehicle, SAC ¶69;

- three NHTSA complaints pre-dating Becker's lease, along with several NHTSA complaints thereafter, SAC ¶¶ 72–74.

- **Defendants' Conduct**

According to Becker, Defendants made partial representations "touting 'Safety first, always' and promising smooth, predictable control with One Pedal drive" while concealing the alleged defect. SAC ¶ 45. He also alleges Defendants engaged in concealment, pointing to three discrete actions.

First, Becker points to a Service Manager Bulletin which allegedly enacted a restrictive technician policy that "choked off the primary channel for defect diagnosis at the dealership level just as the first 2021 XC40 Recharge vehicles were beginning to exhibit the early signs of the Powertrain Control Defect." SAC ¶ 48f. Under the bulletin, only high-level technicians were permitted to diagnose issues and perform work on systems where Becker alleges the purported defect resides. *Id.*

Second, Becker alleges concealment through a complimentary factory scheduled maintenance program, or FSM220, which made certain 2021 model year electric vehicles eligible for free maintenance. SAC ¶ 48g. Becker claims the program "created a mechanism to placate the earliest adopters of this new EV technology" while also "sanitizing the nature of the services performed … by preventing the proliferation of more alarming warranty claims that would otherwise be documented." *Id.*

Third, Becker alleges that a Volvo goodwill program offering $1,000 for non-warranty concerns was part of a "deliberate strategy to contain and manage early reports of the Defect without generating a visible record of warranty claims that could have triggered a more comprehensive recall investigation or regulatory scrutiny." SAC ¶ 48h.

- **Plaintiff's Claims**

Plaintiff filed a civil complaint in this Court on June 25, 2025, along with an amended complaint on July 8, 2025. Dkt. 1, 11. He thereafter filed the Second Amended Complaint—now the operative pleading—on August 25, 2025. Dkt. 19. Plaintiff brings six causes of action against Defendants: (1) common law fraudulent concealment; (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784; (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17209; (4) violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509; (5) violation of the Song-Beverly Consumer Warranty Act; and (6) unjust enrichment. SAC ¶¶ 100–108, 109–119, 120–127, 128–135, 136–144, 145–150. He brings the claims on behalf of a nationwide class, along with a California subclass. *Id.* ¶ 92. Becker seeks actual, compensatory, and punitive damages, an order for restitution and disgorgement of profits and unjust enrichment, and injunctive relief. SAC, Prayer for Relief, par. B–D. Defendants move to dismiss all claims and requests for relief alleged in the Second Amended Complaint under Rule 12(b)(6).

1

## LEGAL STANDARD

2

To survive a motion to dismiss, a complaint must allege enough facts to state a claim that is

3 plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Labels, conclusions and mere

4 assertions are not "facts" entitled to the presumption of truth. *Id.* It is not enough to allege facts "merely

5 consistent with" liability or showing "the mere possibility of misconduct." *Id.* at 678.

6

Allegations sounding in fraud, including allegations intended to support consumer protection

7 claims, must satisfy Rule 9(b) and "state with particularity the circumstances constituting fraud," i.e.,

8 "the who, what, when, where, and how of the misconduct charged, as well as what is false or

9 misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-*

10 *Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).

11

## ARGUMENT

12

### I.    Becker Fails To State Any Fraud-Based Claim.

13

Becker alleges four causes of action sounding in fraud: (1) common law fraudulent

14 concealment (count one); (2) violation of the CLRA (count two); (3) violation of the UCL (count

15 three); and (4) breach of the FAL (count four). SAC ¶¶ 100–108, 109–119, 120–127, 128–135. Each

16 of these claims is based on Volvo's alleged concealment of the purported Powertrain Control Defect.

17 *Id.* ¶ 104 (as to common law fraud claim, alleging "Volvo knowingly and intentionally concealed the

18 ongoing risks of the Powertrain Control Defect ..."), ¶ 105 (also alleging "Volvo intentionally

19 concealed the un-remedied aspects of the Defect ..."), ¶ 113  (as to CLRA claim, "Plaintiff and

20 proposed Class Members suffered damages ... because they would not have purchased or leased their

21 Class Vehicles, or would have paid substantially less for them, had they known the true facts concealed

22 by Volvo"); ¶¶ 123–126 (as to UCL claim, alleging unlawful, unfair, and fraudulent prongs—along

23 with damages—stem from alleged concealment of the purported defect); ¶ 131 (as to FAL claim,

24 alleging Volvo's advertisements and marketing "were false and misleading because Volvo failed to

25 disclose, and actively concealed, the existence of the Powertrain Control Defect").

26

Fraudulent concealment (Count 1), CLRA (Count 2), UCL (Count 3), and FAL (Count 4)

27 claims are subject to the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor*

28 *Co.*, 567 F.3d 1120, 1125, 1127 (9th Cir. 2009) (Rule 9(b) applies to any claim that "sounds in fraud,"

including CLRA claims and UCL claims labeled as unlawful- or unfair-practice claims); *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-CV-07271-JST, 2024 WL 5205539, at *10 (N.D. Cal. Dec. 23, 2024) (noting "courts have consistently applied Rule 9(b)'s heightened pleading requirements to claims arising under the UCL and CLRA, as well as claims for fraudulent misrepresentation, fraud by omission, and unjust enrichment"); *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085 (S.D. Cal. 2020), on reconsideration, No. 3:18-CV-0840-GPC, 2020 WL 3840559 (S.D. Cal. July 8, 2020) ("Claims pursuant to the FAL are subject to the heightened pleading requirements of Rule 9(b).") (citations omitted). Rule 9(b) applies to "concealment" or omission claims. *Kearns*, 567 F.3d at 1127. To satisfy Rule 9(b) in those circumstances, a plaintiff "at a minimum must describe the content of the omission"—that is, what the plaintiff claims *should* have been disclosed—and where the omitted information should or could have been revealed. *Sims v. Kia Motors Am., Inc.*, No. SACV-131791-AG, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014) (quoting *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

To state his fraud claims, Becker must allege facts supporting the following elements:

> (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.

*Wheeler v. Ford Motor Co.*, No. 4:22-CV-00931-YGR, 2022 WL 19692038, at *2 (N.D. Cal. May 26, 2022) (*citing Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011)); *see Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1056 (N.D. Cal. 2023). Becker cannot plausibly allege the second or third elements.

### A.    Becker does not adequately allege a duty to disclose.

To allege a duty to disclose, a plaintiff must show the defendant (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact. *Chiulli*, 690 F. Supp. 3d 1038 at 1057; *Cadena*, 2018 WL 8130613, at *10. As a threshold matter, the SAC fails to allege any direct transaction or pre-sale direct communication

1    between Becker and Volvo. As a result, Becker attempts to invoke the second, third, and fourth bases

2    for imposing a duty to disclose. *See* SAC ¶¶ 43–88. That attempt fails for several reasons.

### 1.    *Becker does not allege the direct-transaction element.*

4    A duty to disclose only arises "if there is a 'preexisting relationship between the parties, such

5    as 'between seller and buyer ... or parties entering into any kind of contractual agreement.'" *Hervey v.*

6    *Mercedes-Benz USA, LLC*, No. B321367, 2025 WL 520308, at \*4 (Cal. Ct. App. Feb. 18, 2025)

7    (quoting *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 41 (2024)).[1] Decided in 2024, *Rattagan*

8    confirmed the general applicability of the direct-transaction requirement. *See* 17 Cal. 5th at 41. Since

9    then, courts have concluded that the direct-transaction requirement prevents plaintiffs from bringing

10   concealment-based claims against auto ***manufacturers*** that did not sell the subject vehicle to the

11   plaintiff. *See Hervey*, 2025 WL 520308, at \*4; *Gonzalez v. Nissan N. Am., Inc.*, No. 2:24-cv-04101-

12   SVW, 2024 WL 5369367, at \*5 (C.D. Cal. Oct. 16, 2024) (in a new-car case, finding no duty to

13   disclose because the plaintiff purchased the vehicle from a dealership and "did not purchase the

14   Subject Vehicle from Defendant").

15   This case is like *Gonzalez*—the direct-transaction element is not satisfied because Becker "did

16   not [lease] the Subject Vehicle from Defendant." *See* 2024 WL 5369367, at \*5; *see also* SAC ¶ 10

17   (lacking any allegations that Becker purchased his XC40 Recharge directly from defendants Volvo

18   Car North America, LLC or Volvo Car USA LLC). In fact, Becker alleges Volvo Car North America,

19   LLC "serves as Volvo AB's regional operational hub for marketing, branding communications, and

20   warranty program administration[.]" SAC ¶ 11. He also alleges Volvo Car USA LLC "serves as the

21   exclusive importer and distributor of Volvo passenger vehicles in the United States." SAC ¶ 12. As

22   his allegations make clear, neither entity functions as the retail seller of Volvo vehicles (which makes

23   sense because independently owned and operated automotive dealerships serve that function).

24   The SAC does not establish a duty to disclose because Becker fails to allege a direct transaction

25   between him and Volvo. But even if Becker could satisfy the direct-transaction requirement, his

---

[1] In assessing state law, it is appropriate to consider unpublished decisions from California's intermediate appellate court. *See, e.g.*, *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 2003).

allegations regarding Volvo's purported "exclusive knowledge" or "partial representations" are also inadequate, as explained below.

### 2. *Becker does not adequately allege Volvo's exclusive knowledge.*

As the California Supreme Court stated just last year, a duty to disclose may arise when "the material facts are known or accessible ***only to defendant***, and ***defendant knows*** those facts are not known or ***reasonably discoverable*** by plaintiff (i.e., ***exclusive knowledge***)." *Rattagan*, 17 Cal. 5th at 40 (emphasis added). Thus, this obligation to disclose arises only when the material facts are (1) not "reasonably discoverable" to the plaintiff *and* (2) the defendant knows the facts are not reasonably discoverable. *See id.* "[G]eneralized allegations with respect to exclusive knowledge" are insufficient to defeat a dismissal motion. *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *3 (N.D.Cal. Dec. 17, 2009). Becker does not adequately allege that the material facts regarding the Powertrain Control Defect were within Defendants' exclusive knowledge.

Becker must allege Volvo's exclusive knowledge of the purported Powertrain Control Defect when he leased his Volvo XC40 Recharge on September 13, 2024. *See Chiulli*, 690 F. Supp. 3d 1038 at 1057 (citing cases); SAC ¶ 10. Becker makes the general allegation Defendants knew of material facts through (1) internal testing, (2) early consumer complaints from XC40 and Polestar 2 owners, (3) dealership repair orders, and (4) its own internal reviews. SAC ¶ 104.

Becker's vague allegations about internal testing and internal reviews are unsupported. *See Mandani v. Volkswagen Grp. of Am.*, No. 17-cv-07287-HSG, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) ("conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient"); *Blissard v. FCA US LLC*, No. 2:18-cv-02765-JAK-JEMx, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) ("pre-sale testing" and the defendant's "own records" do not sufficiently plead knowledge); *Burdt v. Whirlpool Corp.*, No. C 15–01563 JSW, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) (allegations that the defendant engaged in prerelease testing were insufficient to establish presale knowledge of a defect where the plaintiff did not provide any details about or dates of the alleged tests or exactly what the tests would have shown); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12–cv–1142–SVW–PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (finding plaintiffs' "generalized assertion that unspecified 'pre-release testing data' and 'aggregate data from Honda

1  dealers' fail[ed] to suggest how [such] information could have informed [Honda] of the alleged defect

2  at time of sale").

3        Further, Becker tries (but fails) to adequately allege pre-lease knowledge from consumer

4  complaints. He relies heavily on two incidents that happened *after* he leased his vehicle—the Sandvika

5  Storsenter incident on September 23, 2024, SAC ¶¶ 59–68, 87, and the Shannon Werre incident on

6  December 9, 2024, SAC ¶ 69.[2] Becker also identified three NHTSA complaints pre-dating his lease,

7  along with several NHTSA complaints thereafter. SAC ¶¶ 72–74; *see In re Nexus 6P Prods. Liab.*

8  *Litig.*, 293 F. Supp. 3d 888, 909–10 (N.D. Cal. Mar. 5, 2018) (post-purchase complaints could not

9  establish defendant's pre-purchase knowledge of a defect). Contrary to establishing exclusive

10  knowledge, the NHTSA complaints are publicly available. Anyone interested can search any vehicle

11  for recalls, manufacturer communications with NHTSA about the vehicle and consumer complaints

12  about the vehicle.



---

[2] Apart from occurring after Becker leased his vehicle, the Sandvika Storsenter and Shannon Werre incidents are factually distinguishable. Neither involved allegations of a vehicle rolling downhill when put into drive or reverse at low speeds or at a standstill. *See* SAC ¶ 40. Rather, the Sandvika Storsenter incident allegedly occurred at *high speeds*, when a vehicle "crashed through a brick wall at … 38 mph[.]" *Id.* ¶ 59. Further, Ms. Were alleges she went through a car wash, intended to park near in a spot near the vacuum cleaners (on a flat surface), and as she was braking to a stop, her vehicle suddenly accelerated on its own. *Id.*, Ex. 4, pp. 16 (description of incident), 17–22 (photographs of accident on flat ground).

MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

2    *See* https://www.nhtsa.gov/recalls?vymm=2024%20volvo%20xc40.

3         Apart from being publicly accessible, those three NHTSA complaints are insufficient to

4    support a reasonable inference a defect existed, much less that Defendants had exclusive knowledge

5    it existed. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (allegations of

6    twelve undated consumer complaints and two made well after the plaintiffs' purchases were

7    insufficient to plead knowledge); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal.

8    2018) (allegations of eighty-one complaints over seven years were insufficient); *Deras v. Volkswagen

9    Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) ("Forty-

10   five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate

11   an unusually high number of complaints").

12        As to the two safety recalls, which are public information, they address issues unrelated to the

13   purported Powertrain Control Defect here. NHTSA Safety Recall 22V-288 addresses potential water

14   ingress in the accelerator pedal sensor harness, SAC ¶ 46(c)(ii)—not any built-in weakness caused by

15   problems in the CMA platform such as "sub-threshold electrical anomalies or digital signal corruption

16   … [that] are misinterpreted by Class Vehicles' complex predictable software, particularly the 'One-

17   Pedal Drive' logic." *Id.*  ¶ 39. Similarly, NHTSA Safety Recall 21V-109 addresses a software fault

18   causing *loss* of propulsion—the opposite of the UVP at issue here. SAC ¶¶ 46, 48c. Put simply, the

19   two safety recalls Becker identifies are unrelated to his UVP and defect allegations here. In fact,

20   Becker's vehicle is outside the scope of the recalls—his vehicle is a 2024 XC40 BEV, whereas the

21   Safety Recall 22V-288 applies to 2021–2022 XC40 BEVs and Safety Recall 21V-109 applies to 2021–

22   2022 XC40 BEVs. And even if the recalls were somehow related to the purported UVP defect or

23   covered Becker's model year vehicle, they are publicly available online and cannot serve as the basis

24   for showing Defendants' exclusive knowledge.

25        In sum, Becker does not adequately allege Defendants' exclusive knowledge of the purported

26   defect before he leased his vehicle.

27

28

### 3.    *Becker does not adequately allege a partial-disclosure theory.*

Becker's partial-disclosure theory is equally unsupported. The California Supreme Court has explained that "when the defendant purports to convey the 'whole truth' about a subject, 'misleading half-truths' about the subject may constitute positive assertions for the purpose of negligent misrepresentation." *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 854 (2007), *as modified* (Dec. 26, 2007); *see also Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1082 (1997), *as modified* (Feb. 26, 1997) ("As one commentator observes, '... half of the truth may obviously amount to a lie, *if it is understood to be the whole*.'" (quoting Prosser & Keeton, The Law of Torts (5th ed. 1984), emphasis in *Randi W.*).

According to Becker, Defendants made partial representations generally "touting 'Safety first, always' and promising smooth, predictable control with One Pedal drive" while concealing the alleged defect. SAC ¶ 45. But those statements logically do not constitute "misleading half-truths." To analogize, "[a] statement must be 'specific and measurable' and capable of being proven true or false in order to be actionable as a misrepresentation, or to constitute an actionable warranty." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1119 (C.D. Cal. 2021) (citation omitted). Here, the statements Becker relies on are not "specific and measurable." Nor are they capable of being proven true or false. In fact, the phrases "[s]afety first" and "smooth, predicable control" demonstrate the statements' highly subjective and vague nature. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) ("quality, reliability, performance, and safety" are terms that "consistently qualify as puffery," and the phrase "rigorous testing" is "highly subjective and vague"). Essentially, the statements are little more than non-actionable puffery. Becker's partial-disclosure theory fails.

### B.    Becker does not adequately allege Defendants intentionally concealed or suppressed facts with the intent to defraud him.

Under the third element of a concealment claim, the defendant must have *intentionally concealed* or suppressed the fact with *intent to defraud* the plaintiff. *Wheeler*, 2022 WL 19692038, at *2. Putting aside that Defendants did not conceal any material facts, Becker cannot satisfy this element because he cannot establish intent to defraud as to him. Becker and Defendants had no direct communications or engagement of any type, so none of Volvo's actions (if any) were targeted at

---

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiff. A review of his intent allegations reinforces this conclusion. Becker attempts to allege intent twice, asserting that Defendants "knowingly and intentionally concealed the ongoing risks of the Powertrain Control Defect" and "intentionally concealed the un-remedied aspects of the Defect with the intent to induce Plaintiff and propose Class Members to purchase or lease the Class Vehicles." SAC ¶¶ 104, 105. On their face, these are "legal conclusions" that "[t]he Court must disregard." *See Walters v. Gen. Motors LLC*, 2024 WL 658984, at *1 (C.D. Cal. Jan. 9, 2024).

Insofar as Becker alleges concealment because only high-level technicians were permitted to diagnose and repair the relevant vehicle systems, SAC ¶ 48f, such a requirement does not conceal anything. Rather, limiting certain work to qualified and properly trained technicians shows a deliberate effort to ensure repairs and diagnoses are handled accurately and safely. Likewise, Becker's suggestion that Volvo hid defects through a complimentary factory maintenance program, SAC ¶ 48g, or a goodwill program that offered $1,000 for non-warranty issues, SAC ¶ 48h, does not hold up. These programs are meant to address customer concerns and strengthen brand trust—not to mask problems. Offering free maintenance encourages proper upkeep, and providing goodwill payments to early adopters is a responsible way to acknowledge minor hiccups that nearly always come with new technology. Nothing about those programs keeps customers from discussing issues they experience. If anything, they show a willingness to address concerns openly and maintain customer satisfaction.

In sum, all of Becker's consumer-protection claims should be dismissed for the simple reason that intent is not plausibly alleged.

## II.    The Fraudulent Concealment Claim Is Barred By the Independent Tort Doctrine.

Although the "direct transaction" point is dispositive, Becker's fraudulent concealment claim is also barred by the independent tort doctrine set forth by the California Supreme Court in *Rattagan*.

The California Supreme Court in *Rattagan* considered whether "an independent fraudulent concealment tort may arise during an ongoing contractual relationship." *Rattagan*, 5 Cal.5th at 19. In doing so, the Court went beyond the economic loss rule, examining "a broader set of cases exploring the dividing line between tort and contract law." *Id.* The Court began by analyzing an assortment of cases involving non-intentional torts, concluding that "[c]ourts generally permit tort suits if the defendant allegedly violated a duty rooted in tort principles that is independent of the parties'

contractual rights and obligations and exposed the plaintiff to a risk of harm beyond the parties' reasonable contemplation when they entered into the contract." *Id.* at 23.[3]

The Court then provided guidance for assessing the applicability of this "independent tort principle." *Id.* at 26. "When evaluating whether the parties' expectations and risk allocations bar tort recovery, the court must consider the alleged facts" and conduct a three-step analysis. *Id.*

- "First, applying standard contract principles, [the court] must ascertain the full scope of the parties' contractual agreement, including the rights created or reserved, the obligations assumed or declined, and the provided remedies for breach."

- "Second, it must determine whether there is an independent tort duty to refrain from the alleged conduct."

- "Third, if an independent duty exists, the court must consider whether the plaintiff can establish all elements of the tort independently of the rights and duties assumed by the parties under the contract."

*Id.* The Court then set forth the overarching standard to be applied:

> The guiding and distinguishing principle is this. **If the alleged breach is based on a failure to perform as the contract provides, and the parties reasonably anticipated and allocated the risks associated with the breach, the cause of action will generally sound only in contract because a breach deprives an injured party of a benefit it bargained for**. However, if the contract reveals the consequences were not reasonably contemplated when the contract was entered and the duty to avoid causing such a harm has an independent statutory or public policy basis, exclusive of the contract, tort liability may lie.

*Id.* at 27 (emphasis added).

Becker's allegations set forth the parties' expectations as to what Defendants would do under the warranty in the event that the vehicle needed repairs—*i.e.*, they would provide those repairs at no cost. *See* SAC ¶¶ 48e, 48g, 48f (showing understanding of warranty claim process). The alleged fraud here, in the *Rattagan* court's words, "is based on a failure to perform" as the warranty provides, and

---

[3] The scope of the *Rattagan* court's survey included case law of alleged fraudulent inducement *to enter into* a contract. *See Rattagan* 5 Cal.5th at 32–33, 36 n. 11, 41 (discussing *Lazar v. Superior Court*, 12 Cal. 4th 631 (1996); see also *Lazar*, 12 Cal. 4th at 634–35 ("We granted review in this matter to clarify . . . whether or under what circumstances a plaintiff may state a cause of action for fraudulent inducement of employment contract.").

1  Becker cannot prove his "fraud" claim without there being a breach of warranty, *i.e.*, he has no "fraud"

2  damages unless and until a defect exists and cannot be repaired.

3       Contrast this situation with a defect that causes a personal injury. The independent tort doctrine

4  would not bar such a claim. If a defect caused an injury, there are torts that could be proven regardless

5  of whether a manufacturer gave a warranty that it would fix any repairs. But this warranty case is not

6  at all independent from any purported tort claim. In short, the allegations show that Becker cannot

7  establish the elements of fraud independent of the parties' contractual rights and obligations, and that

8  the alleged harm was contemplated by the warranty itself. *See Santana v. FCA US, LLC*, 56 Cal. App.

9  5th 334, 345 (2020) ("The very existence of a warranty presupposes that some defects may occur.").

10  Accordingly, Becker's concealment claim is also barred by the independent tort doctrine.

11  **III.    The Song-Beverly Act Claim Fails.**

12       Becker's implied warranty claim fails because he failed to timely revoke acceptance of the

13  vehicle. He apparently seeks replacement or reimbursement for breach of implied warranty. *See* SAC

14  ¶ 9, Prayer at par. D. However, the right of repurchase or replacement under section 1793.2(d) applies

15  "only when goods cannot be made to conform to the 'applicable express warranties.'" *Music*

16  *Acceptance Corp. v. Lofing*, 32 Cal. App. 4th 610, 620 (1995) (*quoting* Cal. Civ. Code § 1793.2(d)).

17       The remedies for breach of implied warranties are as provided under section 1794 via section

18  1791.1(d). Section 1794(b)(1) provides: "Where the buyer has rightfully rejected or justifiably revoked

19  acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713

20  of the Commercial Code shall apply." "California Uniform Commercial Code section 2711 provides

21  that when a buyer rightfully rejects or justifiably revokes acceptance of goods, the buyer may cancel

22  and recover specified damages 'in addition to recovering so much of the price as has been paid.'"

23  *Music Acceptance Corp.*, 32 Cal. App. 4th at 621 (*quoting* Cal. Com. Code § 2711). In other words,

24  "[f]or a claim for breach of implied warranty of merchantability, upon justifiable revocation of

25  acceptance, the remedies are those set forth in [Cal. UCC] § 2711." *In re Ford Motor Co. DPS6*

26  *Powershift Transmission Prods. Liab. Litig.*, 689 F. Supp. 3d 760, 773 (C.D. Cal. 2023) (emphasis

27  added); *see Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246 (2004). Moreover, "revocation of

28  acceptance must take place 'within a reasonable time after the buyer discovers or should have

1   discovered the ground for it' … [and] must be done before 'any substantial change in condition of the

2   goods.'" *Gavaldon*, 32 Cal. 4th at 1264 (*citing* Cal. Com. Code § 2608, subd. (2)).

3        Here, Becker did not timely revoke acceptance of the vehicle. Becker alleges he first

4   experienced UVP the day after he leased his vehicle, on September 14, 2024. SAC ¶ 29. Yet, Becker

5   did not notify Defendants of his intent to revoke acceptance until filing this action on June 25, 2025.

6   Dkt. 1. Having waited nearly nine months, Becker cannot establish timely revocation, nor revocation

7   done before "any substantial change in condition of the goods." *See Gavaldon*, 32 Cal. 4th at 1264.

8   **IV.    The Unjust Enrichment Claim Fails.**

9        "To state a claim for unjust enrichment, plaintiff must allege: 1) receipt of a benefit, and 2)

10  unjust retention of the benefit at the expense of another." *AccuImage Diagnostics Corp v. Terarecon,*

11  *Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003). Becker fails to plausibly allege that Volvo's retention

12  of any purported benefit is unjust.

13       Retention of a benefit is unjust "when the enrichment obtained lacks any adequate legal basis

14  and thus 'cannot conscientiously be retained.'" *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal.

15  4th 988, 998 (2015). Assuming Becker adequately alleges Volvo somehow received a "benefit," when

16  he leased his vehicle from a third-party dealership, Becker fails to plausibly allege that Volvo's

17  retention of that benefit was unjust. Based on the allegations in the SAC, Becker has apparently chosen

18  to keep and to drive his vehicle. Because he has chosen to retain the benefit of the buy-side of the

19  transaction, it cannot be said that Volvo's retention of any sell-side benefit is unjust. *See, e.g.*, *Metal*

20  *Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (N.Y. App Div. 1990) (finding that a plaintiff who had

21  used the services paid for has thus "received the benefits" and could not recoup the payment in equity).

22  *Cf. Gardiner Solder Co. v. Supalloy Corp.*, 232 Cal. App. 3d 1537, 1542 (Ct. App. 1991) (in a case

23  where a purchase contract was void, observing that "[t]he equitable remedy of restitution to avoid

24  'unjust enrichment' has its roots in the common law" and rejecting an argument that the purchaser

25  could "avoid payment under the contract *and keep the*" *product*).

26  **V.    The Equitable Relief Claims Fails.**

27       A plaintiff seeking equitable relief must, among other things, plead facts showing the plaintiff

28  "lacks an adequate legal remedy." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir.

2020); *see Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (applying *Sonner*). This is a pleading requirement a plaintiff cannot avoid by (for example) alleging legal and equitable claims in the alternative and arguing that whether the legal remedies are adequate cannot be known until later. *See Klaehn*, 2022 WL 1830685, at *3 (holding alternative-pleading argument was "irrelevant"). Legal and equitable claims can be alleged in the alternative, but only if both alternatives are adequately pleaded. *Id.*; *see, e.g.*, *Calcagno v. Kipling Apparel Corp.*, No. 23-cv-2247-BAS-BLM, 2024 WL 3261205, at *11 (S.D. Cal. July 1, 2024); *Bruno v. U.S. Renal Care, Inc.*, No. 2:21-cv-04617-FLA, 2022 WL 2439525, at *7 (C.D. Cal. July 5, 2022); *McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022); *Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-cv-03370-EJD, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022) (citing cases). Becker has not done so here.

First, the Court should dismiss Becker's claims to the extent they seek equitable relief, namely restitution and "disgorgement." *See* SAC, Prayer ¶ C. Here, Becker seeks legal damages under his fraudulent concealment, CLRA, UCL, FAL, and Song-Beverly Act causes of action. SAC ¶ 108 (seeking "diminution in value, overpayment, and other pecuniary losses" under the concealment claim) ¶ 117 (seeking compensatory damages under CLRA claim), ¶¶ 126, 133 (alleging "injury in fact and lost money or property, including the purchase or lease price paid or the overpayment" under UCL and FAL claims); ¶ 144 (seeking "damages, including the diminution in  value, overpayment, and out-of-pocket repair expenses" under the Song-Beverly Act claim); and Prayer ¶ B (seeking actual, compensatory, and consequential damages). Becker fails to allege facts demonstrating that legal remedies would be inadequate. He instead makes boilerplate and conclusory assertions. *See id.* ¶¶ 119, 135, 150. The Court should dismiss the equitable claims.

Second, the Court also should dismiss Becker's claims for injunctive relief. *See* SAC ¶¶ 127, 135, 118, Prayer ¶ D.  In some cases, a plaintiff may be able to plead facts showing legal remedies are inadequate because (for example) he needs an injunction that would protect her against a risk of future injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). But that risk must be "actual and imminent, not conjectural or hypothetical…." *Id.* (citation omitted). Here, Becker illogically alleges he "would purchase or lease a Class Vehicle again if the defect were corrected, but

1  cannot rely on Volvo's representations absent court oversight, and over-the-air updates and evolving

2  calibrations create an ongoing risk of recurrence[.]" SAC ¶ 119, 127, 135. These allegations, however,

3  do not establish a real and immediate risk of future harm. Because Becker is fully aware of the alleged

4  defect, he lacks standing to seek prospective injunctive relief for the very misconduct he now knows

5  about. The injunctive relief claim fails.

6      Third, the Court should dismiss Becker's unjust enrichment claim. SAC ¶¶ 145–150. As this

7  Court recognized, "[a]lthough unjust enrichment itself is not a cause of action, … the Ninth Circuit

8  has recognized that when a plaintiff alleges unjust enrichment, a court may construe the cause of action

9  as a quasi-contract claim seeking restitution[.]" *Chiulli*, 690 F. Supp. 3d at 1062 (cleaned up). An

10 unjust enrichment claim therefore fails when a plaintiff does not plausibly allege an inadequate remedy

11 at law. *See id.* For the same reasons above, the unjust enrichment claim should be dismissed.

12                                  <u>**CONCLUSION**</u>

13     For the above reasons, Defendants request that the Court dismiss all of Plaintiff's claims

14 alleged in the Second Amended Complaint.

15

16  Dated: October 15, 2025                    SHOOK, HARDY & BACON L.L.P.

17

18                                  By: /s/ Colm A. Moran
                                        Michael L. Mallow
19                                      Colm A. Moran

20                                      Attorneys for Defendants
                                        VOLVO CAR NORTH AMERICA, LLC
21                                      and VOLVO CAR USA LLC

22

23

24

25

26

27

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT