Michael L. Mallow (SBN 188745)
mmallow@shb.com
Colm A. Moran (SBN 202685)
cmoran@shb.com
SHOOK, HARDY & BACON L.L.P.
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

Attorneys for Defendants
VOLVO CAR NORTH AMERICA, LLC
*(erroneously sued as Volvo Cars of North America, LLC)* and VOLVO CAR USA LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT M. BECKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLVO CARS OF NORTH AMERICA, LLC, a Delaware limited liability company; VOLVO CAR USA, LLC, a Delaware limited liability company; and VOLVO CARS AB (publ.), a Swedish public limited company,<br><br>Defendants. | Case No. 3:25-cv-05331-MMC<br><br>**REPLY IN SUPPORT OF DEFENDANTS VOLVO CAR NORTH AMERICA, LLC AND VOLVO CAR USA LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: December 5, 2025<br>Time: 9:00 a.m.<br>Courtroom: 7 – 19th Floor |

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.      The Fraudulent Concealment Claim Is Barred By the Independent Tort Doctrine. ........... 2

II.     Becker Fails To State Any Fraud-Based Claim. ................................................................ 5

       A.      Becker does not adequately allege a duty to disclose. ........................................... 5

       B.      Becker does not adequately allege Defendants intentionally concealed or suppressed facts with an intent to defraud him. ..................................................... 11

       C.      Plaintiff's statutory claims still require a duty to disclose. .................................. 11

III.     The Song-Beverly Act Claim Fails. ................................................................................. 12

IV.     The Unjust Enrichment and Equitable Claims Fail. ........................................................ 13

       A.      Becker does not dispute that his unjust enrichment claim is inadequately alleged. .................................................................................................................. 13

       B.      The equitable and injunctive relief claims are inadequately alleged. .................. 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................9

*Azoulai v. BMW of N. Am. LLC*,
  No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ...............................10

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017)...............................................................................9

*Chiulli v. Am. Honda Motor Co.*,
  690 F. Supp. 3d 1038 (N.D. Cal. 2023) .............................................................................12

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) .........................................................................9, 10

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .............................................................................................14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...............................................................................................9

*Falk v. General Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...............................................................................8

*Fitzpatrick v. Ford Motor Co.*,
  No. 2:22-CV-01924-FWS-JPR, 2024 WL 2331843 (C.D. Cal. Jan. 5, 2024)...............12, 13

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  No. CV 20-00769-CJC(GJSx), 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ...................14

*Gofnung v. BMW of N. Am., LLC*,
  No. 2:21-cv-06328-MEMF, 2023 WL 3254976 (C.D. Cal. May 4, 2023).....................12, 13

*Gut v. Ellenburg*,
  No. CV 25-5865-JFW(EX), 2025 WL 2849085 (C.D. Cal. Sept. 18, 2025)......................13

*Johnson v. Glock, Inc.*,
  No. 3:20-CV-08807-WHO, 2021 WL 6804234 (N.D. Cal. Sept. 22, 2021) ...................9, 10

*Ladanowsky v. FCA US LLC*,
  No. 24-CV-07197-JST, 2024 WL 5250357 (N.D. Cal. Dec. 30, 2024) ...............................7

*In re MacBook Keyboard Litig.*,
  No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)............................14

*Meneses v. FCA US LLC*,
   No. 2:25-CV-01002-HDV-KS, 2025 WL 2994998 (C.D. Cal. Oct. 3, 2025) ..........................7

*Moore v. Am. Honda Motor Co.*,
   No. 5:23-CV-05011-BLF, 2025 WL 948114 (N.D. Cal. Mar. 28, 2025) ............................3, 7

*Ramos v. Ford Motor Co.*,
   No. 2:24-CV-04066-AH-(JPRX), 2025 WL 1606917 (C.D. Cal. Apr. 16, 2025) .....................3

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .............................................................................................13

*Star Fabrics, Inc. v. Ross Stores, Inc.*,
   No. 2:17-cv-05877-PA (PLAx), 2017 WL 10439691 (C.D. Cal. Nov. 20, 2017) ..................13

*Sugasawara v. Ford Motor Co.*,
   No. 18-CV-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) .................................4

**State Cases**

*Bigler-Engler v. Breg, Inc.*,
   7 Cal. App. 5th 276 (2017) ..................................................................................................6

*Bjoin v. J-M Manufacturing Co., Inc.*,
   113 Cal. App. 5th 884 (2025), review filed (Oct. 1, 2025) ..........................................6, 7, 11

*Dhital v. Nissan North America, Inc.*,
   84 Cal. App. 5th 828 (2022) ................................................................................................2

*Ford Motor Warranty Cases*, 17 Cal.5th 1122 (2025) ................................................................3, 6

*Gavaldon v. DaimlerChrysler Corp.*,
   32 Cal. 4th 1246 (2004) ....................................................................................................13

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975) .........................................................................................................9

*LiMandri*, 52 Cal. App. 4th 326 (1997) ....................................................................................5, 6

*McCabe v. Am. Honda Motor Co.*,
   100 Cal. App. 4th 1111 (2002) ..........................................................................................11

*Rattagan v. Uber Technologies, Inc.*,
   17 Cal.5th 1 (2024) .......................................................................................1, 2, 3, 4, 6, 8

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ........................................................................................................4

*Seely v. White Motor Co.*,
   63 Cal.2d 9 (1965) ..............................................................................................................3

*Service by Medallion, Inc. v. Clorox Co.*,
    44 Cal.App.4th 1807 (1996) ...........................................................................................4

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ....................................................................................................7

**State Statutes**

Cal. Civ. Code § 1791.1(c) ...................................................................................................13

Cal. Civ. Code § 1794(b)(1) ..........................................................................................12, 13

Cal. Com. Code § 2608 ................................................................................................12, 13

Cal. Com. Code § 2711 .........................................................................................................12

Cal. Com. Code § 2712 .........................................................................................................12

Cal. Com. Code § 2713 .........................................................................................................12

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# INTRODUCTION

Plaintiff Robert Becker's opposition confirms that his claims are legally deficient and should be dismissed. Rather than meaningfully engage with the arguments raised in the Motion, Becker relies on inapposite authority, mischaracterizes controlling precedent, and fails to address a dispositive point altogether. All of his claims should be dismissed.

First, Becker's fraudulent concealment theory is barred by the independent tort doctrine, as articulated in *Rattagan* and reaffirmed by California appellate decisions. His attempt to distinguish *Rattagan* based on the timing of the alleged fraud is unavailing, as courts have recognized that the independent tort doctrine applies equally to pre-contractual conduct when the alleged harm is governed by the parties' contractual expectations.

Second, Becker fails to adequately allege a duty to disclose by direct dealings, exclusive knowledge, partial disclosure, or active concealment. Absent a duty to disclose, all of his fraud-based claims fail. Becker also does not plausibly allege, let alone with the requisite particularity, Defendants intentionally concealed or suppressed facts with an intent to defraud him. The conduct he points to—such as limiting certain repairs to highly trained technicians, offering complimentary maintenance, and providing goodwill payments—reflects standard customer service practices, not fraudulent concealment. These measures are facially reasonable efforts to ensure accurate diagnostics, promote customer satisfaction, and maintain brand loyalty. They do not plausibly suggest an intent to suppress information or mislead consumers.

Third, Becker's Song-Beverly claim fares no better. He concedes that he waited nine months to revoke acceptance, a delay that is unreasonable. His reliance on federal decisions that disregard the statutory framework is misplaced and contrary to California Supreme Court authority.

Fourth, Becker's unjust enrichment and equitable relief claims are either unopposed or unsupported. His failure to oppose Defendants' argument on unjust enrichment constitutes a concession, and his allegations of economic harm are precisely the type of injuries for which legal remedies are adequate under binding Ninth Circuit precedent.

Accordingly, all claims should be dismissed.

**ARGUMENT**

**I.      The Fraudulent Concealment Claim Is Barred By the Independent Tort Doctrine.**

Becker's opposition ignores that his fraud theory is inseparable from the obligation under the parties' written warranty. The alleged harm—vehicle performance issues—is precisely the risk contemplated by the warranty.

The framework supplied by *Rattagan v. Uber Technologies, Inc.*, 17 Cal.5th 1 (2024), resolves this motion, even in light of *Dhital v. Nissan North America, Inc.*, 84 Cal. App. 5th 828 (2022). Becker argues, "[n]othing in *Rattagan* addressed—much less overruled—the separate and well settled body of law governing a manufacturer's duty to disclose latent defects before a consumer ever enters a transaction." Opp. at 3:20–21. According to Becker, the controlling authority is *Dhital* because the California Supreme Court dismissed review of it after issuing *Rattagan*, effectively republishing *Dhital* without modification or instructions. *Id.* at 3:22–27.

Becker's argument is misguided because *Dhital* is **not** inconsistent with *Rattagan*. Rather, *Dhital* explained that the economic loss rule did not apply to the specific facts of the case. 84 Cal. App. 5th at 841–43. And *Rattagan* then confirmed the inapplicability of the economic loss rule in the context of all cases involving "intentional tort claims." 17 Cal. 5th at 38. *Dhital* merely rejected an economic-loss-rule argument that Defendants (in light of *Rattagan*) do not advance here. Becker's argument regarding the economic loss rule's application therefore has no relevance. *See* Opp. at 22:21–23:1. The issue before the Court is not whether the economic loss rule bars Becker's claims, but whether the ***independent tort doctrine*** applies to fraudulent inducement claims. As explained in the Motion, it does.

The independent tort doctrine delineates the boundary between contract and tort claims. This distinction must also be maintained in the context of fraudulent inducement, ensuring that such a claim rests on conduct beyond a mere breach of contract. Defendants have shown that the "risk of harm" in this case—a defective powertrain control system—was expressly contemplated by the warranty contract, which acknowledges the risk of and sets forth remedies. *See* Mot. at 13:21–14:2. Defendants likewise established Becker cannot establish all of the elements of fraud independent of the parties' rights and obligations under the warranty. *See id.* at 13:21–14:10. Because the fraud claims fail to pass

muster under *Rattagan*, the only remaining question is whether *Rattagan* applies to fraudulent-inducement claims.

Becker purports to distinguish *Rattagan* on the grounds that it dealt with "fraud during contractual performance" rather than "pre-transaction fraudulent inducement." Opp. at 3:27–4:2. He cites two federal district court cases recognizing the distinction. Opp. at 4:3–12 (*citing Moore v. Am. Honda Motor Co.*, No. 5:23-CV-05011-BLF, 2025 WL 948114 (N.D. Cal. Mar. 28, 2025); *Ramos v. Ford Motor Co.*, No. 2:24-CV-04066-AH-(JPRX), 2025 WL 1606917 (C.D. Cal. Apr. 16, 2025)). *Moore* and *Ramos* are unpersuasive, especially considering the reasoning set forth by state courts holding the opposite. For example, in *Crair*, *Miller* and *Fabela*, a Los Angeles County Superior Complex Litigation Court directly addressed whether *Rattagan* and the independent tort principle apply "to claims of alleged fraud occurring before a contract was entered—as in for example, a claim of fraudulent inducement to enter a contract." Request for Judicial Notice, Ex. A, *Ford Motor Warranty* Cases (Los Angeles Superior Court, JCCP No. 4856), Dec. 20, 2024 Order Granting Motion for Judgment on the Pleadings Without Leave to Amend, pp. 4–5; *see* Request for Judicial Notice, Exs. B–C (*Miller* and *Fabela* Orders). While *Rattagan* involved conduct occurring in the course of a contract, "the Supreme Court did not hold that tort claims based on pre-contract conduct are categorically viable under the independent-tort principle" and instead indicated the precise opposite by focusing on the importance of maintaining the distinction between contract and tort claims. *See Crair* Order at 6. "A claim of fraudulent inducement to enter a contract implies the parties ultimately entered a contract," and "therefore implicates the policy behind the independent-tort principle." *Id*. Accordingly, "[e]ven if the tort is based on conduct alleged to have occurred before the contract was entered, the claim still must stand independent of a claim of breach of the contract." *Id.* at 7. Unsurprisingly, "there is no authority that claims of fraudulent inducement are independent of contract claims per se." *Id.*

Ultimately, Becker's fraud claims rest on an alleged breach of a warranty. Without the breach, Defendants would have inarguably delivered the promised product in the promised condition. *See Seely v. White Motor Co.*, 63 Cal.2d 9, 16 (1965) (an express warranty "determine[s] the quality of the product the manufacturer promises and thereby determine the quality he must deliver."). There would

1  then be neither a warranty claim nor a fraud claim. *See Service by Medallion, Inc. v. Clorox Co.*, 44
2  Cal.App.4th 1807, 1818 (1996) (discussing fraudulent inducement and observing that conformance
3  with the contract would mean "no misrepresentation would have occurred"); *cf. Sugasawara v. Ford*
4  *Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) ("If the post-
5  recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles'
6  pre-defect values have likewise been restored."). The independent tort doctrine therefore functions in
7  the context of fraudulent inducement claims to distinguish contract and tort claims. The Court should
8  apply it here.

9        Again, Defendants' argument is not based on the economic loss rule and explicitly recognizes
10 the significance—under *Rattagan* and *Robinson Helicopter*—of the independent tort duty to refrain
11 from fraudulent conduct. While there is undisputedly an independent tort duty to refrain from engaging
12 in fraudulent conduct, under *Rattagan*, that is only one part of the equation. The Court must also look
13 to the parties' contractual agreement (here, the new vehicle limited warranty) and assess whether the
14 fraud elements can be established independently of the warranty elements. *Id.* at 13:3–14 (explaining
15 the three-factor guidelines).

16       Becker's claims necessarily fail at both the first and the third steps: (1) Becker cannot establish
17 the elements of his fraud claim independent of the parties' contractual rights and obligations, and (3)
18 the risk of harm at issue was specifically contemplated by the parties when they contracted. Mot. at
19 13:21–14:20. Becker's allegations are insufficient under these steps. Becker must prove the existence
20 of the warranty to establish any duty of disclosure in the first instance. *See* Section II.A.1., *supra*. In
21 *Rattagan*, the Supreme Court confirmed that Plaintiffs' duty-to-disclose theories "presuppose a
22 preexisting relationship between the parties," which means that Plaintiffs must prove "'direct dealings
23 between the plaintiff and the defendant.'" *See Rattagan*, 17 Cal. 5th at 41 (*quoting Bigler-Engler v.*
24 *Breg, Inc.*, 7 Cal. App. 5th 276, 312 (2017). But Becker does not (and cannot) allege any direct
25 dealings with Defendants before entering into the warranty. Moreover, if Defendants delivered the
26 vehicle in the as-promised condition, there could be no fraud. Without a breach of the express
27 warranty, there would be no injury and therefore no fraud.
28

## II. Becker Fails To State Any Fraud-Based Claim.

### A. Becker does not adequately allege a duty to disclose.

Becker argues the SAC pleads three independent bases for a duty to disclose: (1) exclusive knowledge of a material defect, Opp. at 5:3–8:15; (2) active concealment of the defect, *id.* at 8:16–9:9; and (3) direct dealings with Volvo, *id.* at 12:5–15:19. Tangentially, Plaintiff also argues Volvo's partial representations about safety triggered a duty to disclose, *id.* at 9:10–10:2, and those representations are not "puffery" but rather actionable misrepresentations, *id.* at 10:3–12:4. Becker's arguments are unpersuasive.

#### 1. *Becker does not allege the direct-dealings element.*

Becker makes a broad policy statement based on a mischaracterization of Defendants' direct-dealings argument.[1] According to Becker, Defendants' "most audacious" argument is that manufacturers do not owe a duty to consumers unless they sell vehicles directly to the public, which would "immunize every auto manufacturer from liability for concealing safety defects[.]" Opp. at 12:7–9. Defendants never made that argument. Rather, Defendants merely set forth well-established California law on the direct-dealings requirement. Mot. at 7:4–14 (citing cases).

The direct-dealings requirement is not a technicality of uncertain provenance. It is instead recognized "[a]s a matter of common sense." *LiMandri*, 52 Cal. App. 4th at 326, 337 (1997). The court in *LiMandri* explained that, absent a fiduciary relationship, the "circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." *Id.* It is only the existence of "*some relationship* between the parties*" that potentially turns mere nondisclosure into "actionable fraud." *Id.* (quoting BAJI No. 12.36 (8th ed.1994); emphasis in *LiMandri*). Citing Supreme Court cases defining the contours of the fraudulent-inducement doctrine, it was *LiMandri* that first made the influential observation that a "duty to disclose may arise from the relationship between seller and buyer, employer

---

[1] Becker also argues (1) "direct dealings" do not require contractual privity, and (2) all defendants are liable for the same alleged fraudulent conduct. *See* Opp. at 14:14, 15:1–19. These arguments are distractions. Defendants do not contend that contractual privity is required to establish direct dealings. Nor do they argue Becker must plead distinct conduct by each defendant. Becker's arguments therefore misstate Defendants' position and divert attention from the actual issues raised in the motion. They should be disregarded.

and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *Id.*

"With this framework in mind, it is not surprising that most fraudulent concealment allegations stem from precontractual negotiations (as demonstrated by three of the four *LiMandri* examples: 'between seller and buyer, employer and prospective employee, ... or parties entering into any kind of contractual agreement') and are ultimately presented as causes of action for fraudulent inducement or promissory fraud." *Rattagan*, 17 Cal.5th at 41 (*quoting LiMandri*, 52 Cal. App. 4th at 338). Here, of course, none of the "*LiMandri* examples" apply. As the Complaint demonstrates and the Supreme Court directly held in *Ford Motor Warranty Cases*, Defendants were not the seller and Becker and Defendants "have not agreed to *anything*." *See Ford Motor Warranty Cases*, 17 Cal.5th 1122, 1138 (2025). Moreover, *Ford Motor Warranty Cases* established that the warranty was not "part of the sales contract" that Becker was purportedly induced to enter. *Id.* at 1134.

The law rightly requires a "transactional relationship between" the plaintiff and defendant when the alleged fraud is mere silence. *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (2017). Without the direct-dealings requirement, all silence is fraud if the plaintiff can allege the omitted fact was "material." But the law does not casually treat silence as fraud, which is why the direct-dealings requirement is "common sense." *LiMandri*, 52 Cal.App.4th at 337.

Notably, on July 25, 2025, the Court of Appeal rejected the very same broader basis for a duty to disclose that Becker seeks here. *See Bjoin v. J-M Manufacturing Co., Inc.*, 113 Cal. App. 5th 884, 902–904 (2025), review filed (Oct. 1, 2025). *Bjoin* involved the assertion of a fraudulent concealment claim by a purchaser against an upstream manufacturer. *Id.* at 904. The appellant there made the same argument Becker makes here—"a duty to disclose relationship is created between a manufacturer and a consumer when a manufacturer advertises its products to consumers or profits from the sale of its products to consumers." *Id.* at 902; *see* Opp. at 13:16–14:1.

*Bjoin* rejected that argument and affirmed Volvo's position here: a "direct relationship [is] needed to create a duty to disclose." *Id.* at 901. In reaching this conclusion, court extensively quoted and discussed *Rattagan* and *Bigler-Engler*, explaining that there can be no duty to disclose absent a transaction between the plaintiff and the defendant. *See id.* at 902–903. Like *Rattagan* and *Bigler-*

*Engler* before it, the court recognized that a "direct relationship" between plaintiff and defendant is needed for a duty to disclose to arise. *Id.* at 901. And, dispositive here, it confirmed that the indirect relationship between a product manufacturer and ultimate purchaser does not qualify. *Id.* at 902. Becker urges for the same "broad duty to disclose" that *Bjoin* rejected. *See id.* However, the cases on which he relies either pre-date *Bjoin* (*Moore* and *Ladanowsky*) or failed to consider it entirely (*Meneses*). *See Meneses v. FCA US LLC*, No. 2:25-CV-01002-HDV-KS, 2025 WL 2994998, at *4–*5 (C.D. Cal. Oct. 3, 2025); *Moore*, 2025 WL 948114; *Ladanowsky v. FCA US LLC*, No. 24-CV-07197-JST, 2024 WL 5250357, at *3 (N.D. Cal. Dec. 30, 2024).

Putting aside *Bjoin*, Becker's expansive view of the duty to disclose is unfair and unworkable for (at least) two other reasons. <u>First</u>, it is not hard to allege that a fact is "material" in the context of a product purchase. *See In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) (materiality generally a fact question unless the fact is "so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it") (*quoting Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 977 (1997), as modified (July 30, 1997)). So alleged nondisclosure regarding practically any characteristic of a product can represent "fraud" under Becker's approach.

<u>Second</u>, in the absence of a transactional relationship, the defendant lacks an opportunity to disclose anything to any particular plaintiff—and public disclosures (including the defendant's own disclosures) are typically disregarded. This case exemplifies the problem. Defendants did not actually stay silent regarding issues Becker alleges were concealed. As shown by the citations and quotations in the SAC, Defendants affirmatively disclosed issues in NHTSA safety recalls that are publicly available and contained in the very government-maintained database created to provide easy consumer access to information about vehicle issues. *See* Mot. at 10:12–24. *See also,* https://www.nhtsa.gov/press-releases/nhtsa-launches-interactive-searchable-recall-dashboard.

In sum, Becker admits information exists and is publicly available, but he alleges fraud nonetheless because Defendants never told *him*, while asking the Court to overlook that Defendants never had direct dealings with him. This fundamental incongruity of both fact and legal theory is attributable to lax application, or perhaps utter disregard, of the direct-dealings requirement. Becker's proposed expansion of the duty to disclose should be rejected.

**2.     *Becker does not adequately allege Volvo's exclusive knowledge.***

On exclusive knowledge, Becker's opposition recycles allegations about flight data recorders, internal validation studies, warranty records, experiences with the Polestar 2 vehicle, early consumer complaints, and safety recalls. Opp. at 5:6–11, 6:3–7, 6:19–7:15. As explained in the Motion, none establish Defendants had exclusive knowledge of the alleged defect when Becker leased his Volvo XC40 on September 13, 2024. Mot. at 8:18–10:24. Rather than rebut Defendants' arguments or distinguish authority cited as to each category of information (internal testing and reviews, consumer complaints, safety recalls), Becker makes the unsupported assertion that "California law does not require literally exclusive knowledge; superior knowledge suffices." Opp. at 5:16–17.

Plaintiff improperly attempts to lower the pleading standard from exclusive knowledge to superior knowledge, relying on *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1095–96 (N.D. Cal. 2007). While Becker focuses attention on a non-precedential district court case in making his argument, he disregards the California Supreme Court's more recent and actually controlling guidance in *Rattagan*, 17 Cal. 5th 1, 40–41, which clarified a duty to disclose based on *exclusive knowledge* arises only when material facts are not "reasonably discoverable" to plaintiff and defendant knows that to be true. Becker therefore misapplies the relevant standard.

Becker next argues the SAC's "detailed allegations" demonstrate superior knowledge, pointing to allegations about flight data recorders and experiences with the Polestar 2. Opp. at 6:3–24. He then argues Defendants' knowledge about the purported defect from these sources led to safety recalls involving various XC40 Recharge and Polestar 2 vehicles issued in 2021 and 2022. Opp. at 7:1–7, 8:3–10. As explained in the Motion, and fatal to Becker's argument, these recalls are *public information pre-dating Becker's lease*, and Becker's vehicle is *outside the scope of recalls* in any event. *See* Mot. at 10:12–24. Becker does not (and cannot) dispute this. Further, NHTSA Recall 21V-109 and 21V-110 confirm the safety risk there was entirely different from the purported UVP issues here. Specifically, the recalls characterize safety risk as "[w]orst case scenario…*loss of propulsion* during driving" and link the issue to a micro-processor reset in the Battery Energy Control Module (BECM). Dkt. 42-3 at 2, Dkt. 42-4 at 2 (emphasis added). By contrast, Becker alleges the Powertrain Control Defect involves unintended vehicle *propulsion* stemming from an issue with the Brake-

1   Throttle Override system, not the BECM. SAC ¶¶ 1, 40, 41.

2     Becker also cites the March 3, 2021, bulletin outlining technician qualifications for diagnosing and repairing the alleged issues, as well as Volvo's complimentary factory maintenance program. Opp. at 7:8–8:2. Becker ignores Defendants' argument that these measures reflect a deliberate and responsible effort to ensure repairs are performed accurately and safely. Mot. at 12:7–17. These programs were designed to support customer satisfaction and reinforce brand trust—an appropriate way to acknowledge and manage the minor challenges that often accompany the rollout of new technologies.[2] Thus, Becker has not adequately alleged exclusive knowledge.

### 3. *Becker does not adequately allege a partial-disclosure theory.*

  Becker's partial-disclosure theory is also inadequately pleaded. He contends that Volvo's statements such as "Safety first, always," "Every mile should be safe," and the claim that the XC40 Recharge is "a symbol of [Volvo's] broader commitment to safety and sustainability" are actionable misrepresentations. Opp. at 9:15–17, 10:5–7. They are not. Even under a partial-disclosure theory, courts consistently hold that broad, aspirational statements about safety, quality, or reliability are non-actionable puffery. *See, e.g.*, *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1119 (C.D. Cal. 2021). *Hauter v. Zogarts* is inapposite. That case involved a specific, measurable safety claims—"Completely Safe Ball Will Not Hit Player"—which are materially different from the generalized and aspirational brand slogans at issue here. *See Hauter v. Zogarts*, 14 Cal. 3d 104, 109 (1975).

  Similarly, Becker's reliance on *Johnson v. Glock, Inc.*, No. 3:20-CV-08807-WHO, 2021 WL 6804234 (N.D. Cal. Sept. 22, 2021), is unavailing. While the *Johnson* court declined to dismiss safety-related representations as puffery at the pleading stage, it did so in the context of a firearm—a product inherently associated with serious safety risks and subject to heightened consumer expectations. Importantly, the court distinguished cases involving safety representations about vehicles, noting that cases finding such statements to be puffery generally "do not concern a product like a gun or a hazard

---

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 682–83 (2009) (when a complaint alleges facts that admit an "obvious alternative explanation" for the defendant's conduct, it must be dismissed in the absence of additional allegations of "factual content to 'nudg[e]' [the] claim … 'across the line from conceivable to plausible'"); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014).

like a blowout." 2021 WL 6804234, at *9. The court further observed that in cases such as *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017), where a statement about a "safe" door-closing feature was found non-actionable as puffery, the statement lacked objective verifiability and context of a serious, inherent safety risk. *Id.*

This distinction is dispositive. Unlike the firearm in *Johnson*, the safety slogans at issue here—*e.g.*, "Safety first, always" and "Every mile should be safe"—are generalized brand messaging. Courts consistently hold that such aspirational statements in the automotive context are non-actionable puffery. See *Clark.*, 528 F. Supp. 3d at 1119. Accordingly, *Johnson* does not support Becker's theory of liability. If anything, it reinforces the principle that puffery analysis is context dependent. In the automotive context, broad safety slogans are not actionable misrepresentations.

### 4.     *Becker does not allege active concealment.*

Becker argues a duty to disclose exists because Defendants actively concealed the alleged Powertrain Control Defect. Opp. at 8:16–9:9. Defendants purportedly "took affirmative steps to conceal the defect's existence" by issuing restrictive Technical Service Bulletins (TSBs), implementing the FSM220 complimentary maintenance program, and offering $1,000 goodwill payments to certain customers. *See id.* These allegations, however, are not only implausible, but they mischaracterize standard industry practices aimed at ensuring customer satisfaction and safety.

As Defendants explained in their Motion, the TSBs merely ensured that repairs were performed by highly trained technicians qualified to work on complex electric vehicle systems. Far from concealing a defect, this approach reflects a responsible effort to ensure accurate diagnostics and safe repairs. See Mot. at 11–12. Similarly, Becker's assertion that the FSM220 maintenance program was designed to "sanitize" warranty records ignores the program's stated purpose: to provide complimentary service to early adopters of new technology. Offering free maintenance is a common practice in the automotive industry to promote customer satisfaction and brand loyalty—not to suppress defect reporting. Finally, Becker's claim that goodwill payments were intended to prevent NHTSA reporting is speculative and unsupported. Providing discretionary goodwill gestures to address non-warranty concerns is a standard customer service tool.

None of these programs prevented customers from reporting issues to regulators or discussing

their experiences publicly. In fact, Becker himself reported his concerns to NHTSA shortly after experiencing the alleged issue. SAC ¶ 34. This significantly undermines any claim that Defendants' conduct was intended to conceal the defect or suppress public awareness. More importantly, regardless of Defendant's intent, there is no indication that these actions actually successfully facilitated concealment.

In sum, Becker has not adequately alleged facts showing Defendants owed him a duty to disclose. All of his fraud-based claims therefore fail as a matter of law.

### B. Becker does not adequately allege Defendants intentionally concealed or suppressed facts with an intent to defraud him.

Becker fails to adequately allege the third element of a concealment claim—Defendants *intentionally* concealed or suppressed a fact *with the intent* to defraud. Mot. at 11:22–19. In opposition, Becker argues the SAC alleges scienter with particularity. He points to a single instance of "private acknowledgement" of a defect—*i.e.*, a Critical Incident Coordinator's written response to Shannon Werre, who claims to have experienced a UVP event while at a car wash. Opp. at 15:22–16:2, 16:13. Becker's argument is unpersuasive. First, the Critical Incident Coordinator wrote "there was a *manufacturing* [as opposed to design] defect at the time of the incident." SAC ¶ 71; Dkt. 19-4 at 2. But a single manufacturing defect would not show knowledge of a widespread issue affecting certain model year Volvo XC40 vehicles. *See McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) (stating a manufacturing defect "exists when an item is produced in a substandard condition" and "is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line"). Second, this Critical Incident Coordinator wrote the message *to Ms. Werre* directly, not to someone else internally at Volvo. Becker's argument is therefore nonsensical. And to the extent Becker relies on other sources of information (TSBs, the FSM220, goodwill payments, etc.), they too do not show an intent to conceal for the same reasons set forth above. Becker has not plausibly alleged the requisite intent.

### C. Plaintiff's statutory claims still require a duty to disclose.

Becker argues his statutory claims are viable because they do not require privity. Opp. at 17:3–21:18. But that misstates the issue. Defendants did not argue contractual privity is required to assert

1  claims under the CLRA, UCL, or FAL. Rather, Defendants argued Becker's fraud-based claims
2  (including the statutory fraud claims) fail because he cannot establish a duty to disclose—a distinct
3  and necessary element of the fraudulent concealment claims. Notably, Becker does not challenge the
4  requirement that his CLRA, UCL, and FAL claims must be supported by a duty to disclose. Nor can
5  he. In ruling on a motion to dismiss common law and statutory fraud-based claims (among others),
6  this Court recognized the duty to disclose requirement for fraud based on concealment or omission,
7  noting "[t]he elements of fraud-based claims under the relevant state consumer protection statutes are
8  similar." *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1056 (N.D. Cal. 2023) (citation
9  omitted).

10  Becker therefore conflates "privity" with the direct dealings element of establishing a duty to
11  disclose. That is incorrect. Defendants acknowledged that a duty to disclose may arise in various ways,
12  including exclusive knowledge, active concealment, or partial representations. But critically,
13  Defendants argued that a duty only arises where there are *direct dealings* between the parties. Becker
14  leased his vehicle from a third-party dealership and alleges no direct transaction, communications, or
15  other interaction with Defendants. That absence of direct dealings is fatal to his fraud-based claims—
16  not because privity is required, but because it precludes the imposition of a duty to disclose.

17  In short, Becker flipped the argument on its head. He sidesteps this threshold issue by attacking
18  a strawman, conflating the duty to disclose with privity and avoiding the core defect in his fraud theory:
19  the absence of any direct dealings with Defendants.

20  **III.   The Song-Beverly Act Claim Fails.**

21  Becker relies on federal district court decisions—*Fitzpatrick* and *Gofnung*—that analyze the
22  Song-Beverly Act's implied warranty provisions in isolation, without adequately accounting for its
23  interaction with the California UCC. *See Fitzpatrick v. Ford Motor Co.*, No. 2:22-CV-01924-FWS-
24  JPR, 2024 WL 2331843, at *4 (C.D. Cal. Jan. 5, 2024), and *Gofnung v. BMW of N. Am., LLC*, No.
25  2:21-cv-06328-MEMF, 2023 WL 3254976, at *8 (C.D. Cal. May 4, 2023). While Civil Code section
26  1794(b)(1) incorporates the UCC's remedial provisions—specifically sections 2711 through 2713—
27  it does so only upon a buyer's rightful rejection or justifiable revocation of acceptance. The courts in
28  *Fitzpatrick* and *Gofnung*, however, treat the Song-Beverly Act as if it operates entirely independently

of the UCC, ignoring that the Act's own remedial scheme expressly hinges on the buyer's compliance with the UCC's revocation framework. This includes the requirement under Commercial Code section 2608 that revocation must occur within a reasonable time after discovery of the defect and before any substantial change in the condition of the goods not caused by the defect itself.

By disregarding these statutory prerequisites, *Fitzpatrick* and *Gofnung* improperly expand the scope of Song-Beverly remedies. The California Supreme Court has made clear that where the Legislature borrows from the UCC—as it did in section 1794(b)(1)—the incorporated provisions must be given effect. *See Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1264 (2004) (applying UCC section 2608's timing requirement to revocation under Song-Beverly). To hold otherwise would render the statutory reference to UCC remedies meaningless.

Accordingly, this Court should decline to follow *Fitzpatrick* and *Gofnung* and instead apply the well-established principle that a plaintiff seeking Song-Beverly remedies for breach of implied warranty must demonstrate a timely and justifiable revocation of acceptance consistent with Commercial Code section 2608. Here, Plaintiff concedes he waited nine months to revoke acceptance. Opp. at 20:5–6. That delay is unreasonable as a matter of law, especially where the implied warranty duration lasts at most one year after sale or lease of the vehicle. *See* Cal. Civ. Code § 1791.1(c).

**IV.    The Unjust Enrichment and Equitable Claims Fail.**

**A.    Becker does not dispute that his unjust enrichment claim is inadequately alleged.**

As explained in Defendants' Motion (Mot. at 15:8–25), Becker fails to state a claim for unjust enrichment because he does not plausibly allege that Defendants' retention of any benefit was unjust. Becker does not respond to this argument in his Opposition. His silence constitutes a concession of the issue and provides an independent basis for dismissal. *See, e.g.*, *Gut v. Ellenburg*, No. CV 25-5865-JFW(EX), 2025 WL 2849085, at *7 (C.D. Cal. Sept. 18, 2025) ("In this case, Plaintiff does not address, and thus concedes, Defendants' argument that Defendants are not subject to specific jurisdiction in California."); *Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 2:17-cv-05877-PA (PLAx), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments or otherwise consented to granting the motion.").

**B.     The equitable and injunctive relief claims are inadequately alleged.**

Becker argues that legal remedies are inadequate to address an alleged ongoing safety risk and public deception. He also contends that monetary damages will not compel Defendants to disclose the purported defect. These arguments are unavailing.

Becker's alleged injuries—"diminution in value, overpayment, and other pecuniary losses" (SAC ¶ 108; *see also id.* ¶¶ 90, 142)—are quintessentially monetary in nature. Courts applying *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), have held that such economic injuries are compensable through legal remedies. *See In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) ("Because Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue refunds, the Court finds that monetary damages would provide an adequate remedy for the alleged injury."); *see also Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC(GJSx), 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (rejecting equitable relief where plaintiff alleged only monetary loss).

Becker's claim for injunctive relief also fails. He does not allege any continuing or imminent injury. To establish standing for prospective relief, a plaintiff must plausibly allege that they either (1) intend to purchase the product again but cannot rely on its advertising, or (2) might purchase the product again despite prior deception. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018). Becker's generalized concerns about public safety and deception are insufficient to establish standing for injunctive relief.

Accordingly, the Court should dismiss Becker's claims for unjust enrichment and all equitable and injunctive relief.

///
///
///
////
///
///
///

**CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' Motion, the Court should dismiss Plaintiff's Second Amended Complaint in its entirety and with prejudice.

Dated: November 12, 2025

SHOOK, HARDY & BACON L.L.P.

By: /s/ Colm A. Moran
Michael L. Mallow
Colm A. Moran
Attorneys for Defendants
VOLVO CAR NORTH AMERICA, LLC (*erroneously sued as Volvo Cars of North America, LLC*) and VOLVO CAR USA LLC