Michael L. Mallow (SBN 188745)
mmallow@shb.com
Colm A. Moran (SBN 202685)
cmoran@shb.com
SHOOK, HARDY & BACON L.L.P.
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

Attorneys for Defendant
VOLVO CARS AB

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT M. BECKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLVO CARS OF NORTH AMERICA, LLC, a Delaware limited liability company; VOLVO CAR USA, LLC, a Delaware limited liability company; and VOLVO CARS AB (publ.), a Swedish public limited company,<br><br>Defendants. | Case No. 3:25-cv-05331-MMC<br><br>**DEFENDANT VOLVO CARS AB's NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 27, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7 – 19th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Friday, February 27, 2026, at 9:00 a.m., before the Honorable Maxine M. Chesney, in Courtroom 7 – 19th Floor of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Volvo Cars AB will and hereby does move the Court for an Order granting its Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

This motion is based on the concurrently filed memorandum of points and authorities, the Declaration of Magnus Ragnmark, the files and records in this case, and such arguments as the Court may hear upon this motion.

Dated: January 20, 2026

SHOOK, HARDY & BACON L.L.P.

By: /s/ Colm A. Moran
    Michael L. Mallow
    Colm A. Moran

    Attorneys for Defendant VOLVO CARS AB

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND FACTS .............................................................................................................. 2

    **A.**    Becker's Defect Allegations .................................................................................. 2

    **B.**    Personal Jurisdiction Allegations Against Volvo Cars AB .................................... 2

    **C.**    Volvo Cars AB Has No Contacts with California ................................................. 3

LEGAL STANDARDS .................................................................................................................. 5

ARGUMENT .................................................................................................................................. 6

I.    THE COURT LACKS GENERAL PERSONAL JURISDICTION OVER VOLVO CARS AB ............................................................................................................. 6

II.    THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER VOLVO CARS AB ............................................................................................................. 7

    **A.**    Becker Cannot Meet the Purposeful Availment or Purposeful Direction Standards. ............................................................................................................... 8

    **B.**    Becker's Claims Do Not Arise Out of Or Relate to Volvo Cars AB's Alleged Forum Contacts. ................................................................................................... 12

    **C.**    Exercising Specific Jurisdiction Over Volvo Cars AB Would Be Unreasonable. 12

III.    BECKER IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY. ......................... 14

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102 (1987) .......................................................................................................... 13

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ........................................................................................ 5, 14

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017) ............................................................................................................ 5

*Calder v. Jones*,
  465 U.S. 783 (1984) ............................................................................................................ 7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................................ 6

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ............................................................................................ 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ........................................................................................................ 8

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
  905 F.3d 597 (9th Cir. 2018) .............................................................................................. 6

*Getz v. Boeing Co.*,
  654 F.3d 852 (9th Cir. 2011) ............................................................................................ 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ............................................................................................................ 6

*Gray & Co. v. Firsetenberg Mach. Co.*,
  913 D.2d 758 (9th Cir. 1990) ......................................................................................... 7, 9

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ......................................................................................... 8, 11

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................................................ 5

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ............................................................................................................ 6

*Lee v. United Parcel Serv., Inc.*,
  731 F. Supp. 2d 194 (D.P.R. 2010) .................................................................................... 7

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .................................................................................................7, 10

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...............................................................................................................6

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...............................................................................................5, 6, 7, 9

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ...............................................................................................................6

*Sinatra v. Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) .......................................................................................................12, 13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...............................................................................................................5

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ...................................................................................................5, 7, 8

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023)..................................................................................................8, 12

**Statutes**

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784 .......................................................2

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509....................................................2

Song-Beverly Consumer Warranty Act ..........................................................................................2

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17209................................................2

**Rules**

Fed. R. Civ. P. 12(b)(2)....................................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1

**INTRODUCTION**

Plaintiff Robert Becker ("Becker") brings this putative class action alleging 2019-2024 Volvo XC40 Recharge electric vehicles are defective because they may experience "uncommanded vehicle propulsion" (UVP). The Second Amended Complaint ("SAC") names three distinct corporate defendants: (1) Volvo Car North America, LLC ("VCNA"); (2) Volvo Car USA LLC ("VCUSA"); and (3) Volvo Cars AB, the Swedish parent company of VCNA. Fundamentally, Becker's claims are concealment claims. *See, e.g., SAC* at ¶ 6 ("Volvo's downplaying and concealment of the defect violate common-law fraudulent concealment, statutory consumer-protection laws, and warranty obligations.").

Defendant Volvo Cars AB is not subject to personal jurisdiction in California. It is neither organized under California law nor does it have its principal place of business here. It does not distribute, sell, market, or manufacture Volvo vehicles in California, and does not have any other contacts with California that would support the exercise of personal jurisdiction in this case. Becker alleges no facts establishing Volvo Cars AB is subject to general jurisdiction in California. Specific jurisdiction is also lacking, as Becker fails to allege facts establishing Volvo Cars AB purposefully availed itself of the privilege of conducting activities in California or purposefully directed activities at California, or that his claims arise out of or are related to Volvo Cars AB's alleged contacts with California. To the contrary, Becker alleges it was the other defendants – VCNA and VCUSA – who were "responsible for U.S. sales, marketing, warranty administration, and dealer communication" related to the Volvo vehicle he leased, which is the conduct that forms the essential basis of Becker's claims. *See, e.g.,* SAC at ¶ 12. Finally, as discussed below, it would be unreasonable to exercise jurisdiction over Volvo Cars AB in this action.

For these reasons, the Court should dismiss all claims against Volvo Cars AB for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).[1]

---

[1] Volvo Cars AB hereby joins the motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by VCNA and VCUSA (ECF No. 38) to the extent that the Court determines that personal jurisdiction exists over Volvo Cars AB and expressly reserves all rights in that regard.

## BACKGROUND FACTS

### A.   Becker's Defect Allegations

Becker is a resident of California. SAC ¶ 10. He alleges he leased a new 2024 Volvo XC40 Recharge on September 13, 2024. SAC ¶ 10. He claims he experienced UVP—what he describes as "forward or rearward movement (including surging, lurching, or acceleration) initiated by the powertrain control system without a corresponding driver throttle command and contrary to driver intent." *Id.* ¶ 1. Becker alleges his vehicle, and all other 2021–2024 Volvo XC40 Recharge electric vehicles, suffer from a purported Powertrain Control Defect whereby the vehicle experiences this UVP at low speeds and gear transitions, and often in One-Pedal Drive function. *Id.* Becker brings six causes of action against Volvo Cars AB (and against VCNA and VCUSA): (1) common law fraudulent concealment; (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784; (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17209; (4) violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509; (5) violation of the Song-Beverly Consumer Warranty Act; and (6) unjust enrichment. SAC ¶¶ 100–108, 109–119, 120–127, 128–135, 136–144, 145–150. He brings the claims on behalf of a nationwide class, along with a California subclass. *Id.* ¶ 92.

### B.   Personal Jurisdiction Allegations Against Volvo Cars AB

Becker alleges Volvo Cars AB "is the manufacturer of the Class Vehicles and is subject to specific personal jurisdiction" in this Court "because it purposefully directed … the design, certification, marketing, advertising, and distribution of the XC40 Recharge toward California consumers…." SAC ¶ 17.

In particular, Becker alleges the following "forum-directed activities" by Volvo Cars AB: (1) obtaining CARB Executive Order A-18-0224-1 "certifying the XC40 Recharge for sale in California, thereby intentionally placing the vehicle into the California stream of commerce;" (2) it "authored, owns, and enforces the global 'Volvo Experience & Identity Guideline (the 'Brand Book'),'" which purportedly "govern U.S. dealer signage, advertising layouts, and the use or placement of safety tag-lines;" (3) it "pre-approves or requires approval of safety messaging disseminated in the Unites States,

including the corporate safety tagline "Safety first, always;" (4) it "controls that authorized-dealer network in California through technical journals, warranty directives, and marketing-compliance audits, requiring dealers to submit proposed advertisements to Volvo [Cars] AB's Brand Portal for approval and to remedy any deviation from the Brand Book;" and (5) it "derives hundreds of millions of dollars in annual revenue from California sales of Volvo vehicles—revenue that flows upstream to Volvo [Cars] AB through its wholly-owned U.S. subsidiaries." SAC ¶¶ 17(a) - (e). Most of Becker's allegations about Volvo Cars AB are inaccurate.

Becker also alleges: (1) VCNA "serves as Volvo [Cars] AB's regional operational hub for marketing, branding communications, and warranty program administration in the United States and Canada" and has "its principal place of business in Mahwah, New Jersey" (SAC ¶ 11); (2) VCUSA "serves as the exclusive importer and distributor of Volvo passenger vehicles in the United States," "is responsible for U.S. sales, marketing, warranty administration, and dealer communication" and has "its principal place of business in Mahwah, New Jersey" (SAC ¶ 12); and (3) "VCNA designed and executed North American advertising campaigns, while VCUSA disseminated those campaigns through U.S. dealer channels. VCNA's marketing role focused on regional brand strategy and consumer-facing campaigns, whereas VCUSA implemented those campaigns at the retail level, coordinating with authorized dealers for local dissemination and compliance." SAC ¶ 24.

Finally, Becker alleges Volvo Cars AB "is a Swedish public limited company headquartered in Gothenburg, Sweden," is "the ultimate parent of numerous operating subsidiaries worldwide, including VCUSA," and "exercises independent operational control over the design, engineering, and production of all Volvo passenger vehicles, including the Class Vehicles at issue in this action." SAC ¶ 13.

C.     **Volvo Cars AB Has No Contacts with California**

Volvo Cars AB is a corporate entity established under the laws of Sweden with a principal place of business in Gothenburg, Sweden. Declaration of Magnus Ragnmark (the "Ragnmark Decl.") at ¶ 5 and SAC at ¶ 13. It does not own any real property in California, is not registered to do business in California, does not have an office in California, and is not a taxpayer in California. Ragnmark

Decl. at ¶ 6.

Volvo Cars AB does not manufacture Volvo passenger vehicles in the United States and does not import Volvo vehicles into the United States or, in particular, into the State of California. *Id.* at ¶¶ 12 and 13. Volvo passenger vehicles that are manufactured outside of the United States and sold within the United States are imported by VCUSA. *Id.* at ¶ 12; SAC ¶ 12. VCUSA is a Delaware company with its principal place of business in New Jersey. SAC ¶ 12.

Volvo Cars AB does not sell Volvo vehicles to independent Volvo retailers or consumers in the United States, including in the State of California. *Id.* at ¶ 14. Rather, VCUSA distributes (sells) Volvo-branded passenger vehicles to independent Volvo retailers throughout the United States, including in California. *Id.* at ¶ 15; *see also* SAC ¶ 12. Volvo Cars AB does not issue any warranties to consumers in the United States, including to consumers in the State of California, and is not responsible for implementing or carrying out the warranty processes in the United States. *Id.* at ¶ 16. VCUSA issues such warranties and is the warrantor for Volvo passenger vehicles sold in the United States. *Id.*

Volvo Cars AB has no relationship, contractual or otherwise, with independent Volvo retailers in the State of California. *Id.* at ¶ 17. Volvo Cars AB also does not share the cost of any advertisements made by independent Volvo retailers in the State of California. *Id.* Volvo Cars AB does not engage in the advertising or promotion of vehicles in the State of California and does not direct marketing at consumers in California. *Id.* at ¶¶ 18-19.

Additionally, Volvo Cars AB does not certify or provide certification training to technicians who work at independent Volvo retailers in California or send technical service bulletins to Volvo retailers in the State of California. *Id.* at ¶¶ 17, 24. Volvo Cars AB also does not operate any sales or service network for any product in the State of California, direct California consumers to service centers in the State of California for any work associated with recalls of Volvo-branded products or mail recall notices to consumers in the State of California related to any alleged safety defect. *Id.* at ¶¶ 22-24.

**LEGAL STANDARDS**

Federal courts apply state law to determine the bounds of their jurisdiction over a party. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017). Because California's long-arm statute authorizes personal jurisdiction to the extent such jurisdiction comports with due process, the analyses under California and federal law are the same. *Id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017).

General jurisdiction is "all-purpose jurisdiction:" it allows a court to hear any claim against a defendant even if all the incidents underlying the claim occurred in a different state. *Id.* Only a limited set of affiliations with a forum, however, will render a defendant amenable to general jurisdiction there. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

Specific jurisdiction must be "case-linked:" the plaintiff's suit must itself arise out of or relate to the defendant's forum contacts. *Bristol-Myers*, 582 U.S. at 262. Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotations omitted). The underlying controversy "'must arise out of contacts that the 'defendant [itself]' creates with the forum State.'" *Williams*, 851 F.3d at 1023 (quoting *Walden v. Fiore*, 571 U.S. 284 (2014) (brackets in original)). And the required minimum contacts "must be 'with the forum State itself, not … with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285).

When a defendant contests personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[M]ere bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (quotations omitted). Moreover, the plaintiff

must allege sufficient facts to support the exercise of personal jurisdiction over each defendant individually. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

"Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). But if the defendant produces a declaration that contradicts the allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

## ARGUMENT

### I. THE COURT LACKS GENERAL PERSONAL JURISDICTION OVER VOLVO CARS AB.

A court may exercise general jurisdiction over a defendant corporation only if its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Such contacts must be "constant and pervasive." *Daimler*, 571 U.S. at 122. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler*, 571 U.S. at 137). In modern years, the Supreme Court has "declined to stretch general jurisdiction beyond limits traditionally recognized," and therefore "general jurisdiction has come to occupy a less dominant place in the contemporary scheme" than specific jurisdiction. *Daimler*, 571 U.S. at 132.

Becker does not allege the Court has general jurisdiction over Volvo Cars AB, nor could he. *See* SAC ¶ 17 (alleging only that the Court has "specific personal jurisdiction" over Volvo Cars AB). It is undisputed Volvo Cars AB is not incorporated in California and does not have its principal place of business in California. Volvo Cars AB is established under the laws of Sweden with a principal

place of business in Gothenburg, Sweden.

## II. THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER VOLVO CARS AB.

In the Ninth Circuit, specific jurisdiction exists "only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comports with fair play and substantial justice, i.e., it [is] reasonable." *Williams*, 851 F.3d at 1023(brackets in original). If a plaintiff cannot satisfy either of the first two prongs of this test, "personal jurisdiction is not established." *Schwarzenegger*, 374 F.3d at 802; *see also, e.g.*, *Lee v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 194, 201 (D.P.R. 2010) ("Since Plaintiff cannot meet the relatedness inquiry, the Court finds there is no specific jurisdiction and, therefore, the Court need not address the reasonableness and purposeful availment requirements.").

A "purposeful availment analysis is most often used in suits sounding in contract" and a "purposeful direction analysis … is most often used in suits sounding in tort." *Scharzenegger*, 374 F.3d at 802 (citations omitted).

The purposeful availment standard asks whether the foreign defendant has deliberately "engaged in significant activities within a State or has created 'continuing obligations' between [it]self and the residents of the forum." *Gray & Co. v. Firsetenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). That "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.

Purposeful direction is measured by the three-part "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quotations omitted). Under both standards, however, the "'placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state,' even if the defendant is "'aware[] that the stream

of commerce may or will sweep the product into the forum state.'" *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)) (brackets in original).

In addition to establishing purposeful availment or purposeful direction, a plaintiff must also show that the "claim arises out of or relates to the defendant's forum-related activities." *Williams*, 851 F.3d at 1023. In *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, the Supreme Court announced that "arise out of" and "relates to" are alternative tests. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-28 (2021) (finding Ford was subject to specific jurisdiction over personal injury claims in Montana and Minnesota because, *inter alia*, "[b]y every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles…."). "[F]or a claim to arise out of a defendant's forum contacts requires causation…." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023); *see also Ford*, 141 S. Ct. at 1026. For there to be "causation," there must be a "'direct nexus … between [a defendant's] contacts [with the forum state] and the cause of action.'" *Id.* at 504 (internal citations omitted; brackets in original). On the other hand, a "claim can relate to [the defendant's] contacts, even absent causation…." *Yamashita*, 62 F.4th at 505 (citing *Ford*, 141 S. Ct. at 1026-27). "In effect, relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove. On this line of reasoning, a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Id.* But, *Ford* "makes clear that 'relate to' 'does not mean anything goes.' To the contrary, to give 'relate to' too broad a scope would risk 'collaps[ing] the core distinction between general and specific personal jurisdiction.'" *Yamashita*, 62 F.4th at 506 (internal citations omitted; brackets in original). In *Yamashita*, the Ninth Circuit cited cases from the Seventh and Tenth Circuits with approval interpreting *Ford* and finding that "relatedness requires a close connection between contacts and injury." *Id* at 506.

A. **Becker Cannot Meet the Purposeful Availment or Purposeful Direction Standards.**

As is described in detail in Section II.C., above, Volvo Cars AB has no contacts with California. It is a Swedish corporation with its principal place of business in Gothenburg, Sweden. It

1  does not operate, own property, maintain an office, or pay taxes in California. It does not manufacture
2  vehicles in the United States or import them into the United States. It has no direct contact or
3  relationship with Volvo consumers or retailers in the State of California. And it does not direct any
4  marketing at consumers in the State of California.
5      In an attempt to establish specific personal jurisdiction, Becker alleges Volvo Cars AB:

- obtained CARB Executive Order A-18-0224-1 "certifying the XC40 Recharge for sale in California, thereby intentionally placing the vehicle into the California stream of commerce;" SAC ¶ 17(a);
- "authored, owns, and enforces the global 'Volvo Experience & Identity Guideline (the 'Brand Book'),'" which "govern U.S. dealer signage, advertising layouts, and the use or placement of safety tag-lines;" SAC ¶ 17(b);
- "pre-approves or requires approval of safety messaging disseminated in the Unites States, including the corporate safety tagline 'Safety first, always;'" SAC ¶ 17(c);
- "controls that authorized-dealer network in California through technical journals, warranty directives, and marketing-compliance audits, requiring dealers to submit proposed advertisements to Volvo [Cars] AB's Brand Portal for approval and to remedy any deviation from the Brand Book;" SAC ¶ 17(d); and
- "derives hundreds of millions of dollars in annual revenue from California sales of Volvo vehicles—revenue that flows upstream to Volvo [Cars] AB through its wholly-owned U.S. subsidiaries." SAC ¶ 17(e).

Putting aside that all but the first of the above allegations is inaccurate, these allegations are sufficient to establish Volvo Cars AB purposefully availed itself of the privilege of conducting activities in California. As noted above, "purposeful availment" would require Volvo Cars AB to have deliberately engaged "in significant activities within a State or … created 'continuing obligations' between [it]self and the residents of the forum" (*Gray & Co.*, 913 F.2d at 760 cleaned up)), which "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Nor do the allegations satisfy the three-part

purposeful direction "effects test" (*i.e.,* the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot*, 780 F.3d at 1214).

Most of the allegations in Paragraph 17 of the SAC are directly contradicted by the Declaration of Magnus Ragnmark filed concurrently herewith. Specifically, Volvo Cars AB did not author and does not enforce a document titled "Volvo Experience & Identity Guideline" as alleged in the SAC. Indeed, it appears the SAC is referring to a publication by an entity – AB Volvo – that is unrelated to Volvo Cars AB and that is not involved in the manufacture, sale or marketing of Volvo passenger vehicles (which are at issue in this action), but instead is in the commercial truck business. *See* Ragnmark Decl. at ¶ 20.

It is also untrue Volvo Cars AB "controls [the Volvo] authorized-dealer network in California." Volvo Cars AB has no relationship with Volvo retailers in California. Ragnmark Decl. at ¶ 17. Volvo Cars AB does not review, approve or share in the cost of advertising, certify or provide certification training to technicians, or send technical service bulletins to Volvo retailers in California. *Id.* at ¶¶ 17, 21, 23, and 24. Similarly, Volvo Cars AB – contrary to the allegations of SAC ¶ 17(d) – does not maintain a "Brand Portal" where Volvo retailers are required "to submit proposed advertisements … for approval and to remedy any deviation from the Brand Book." *See* Ragnmark Decl. ¶ 21 (stating Volvo Cars AB does not maintain such a "Brand Portal," but noting that AB Volvo – the commercial truck manufacturer – appears to maintain such a portal). Here, again, it appears Becker's jurisdictional allegations in the SAC are confusing Volvo Cars AB with AB Volvo.

Moreover, the allegation Volvo Cars AB "controls" independent Volvo retailers in California, relating, for example, to marketing issues, is itself contradicted by other allegations in the SAC. *See, e.g.,* SAC ¶ 11 (alleging VCNA "serves as Volvo Cars AB's regional operational hub for marketing, branding communications, and warranty program administration in the United States and Canada."); SAC ¶ 12 (alleging VCUSA "is responsible for U.S. sales, marketing, warranty administration, and dealer communication."); and SAC ¶ 24 (alleging "VCNA designed and executed North American advertising campaigns, while VCUSA disseminated those campaigns through U.S. dealer channels.

VCNA's marketing role focused on regional brand strategy and consumer-facing campaigns, whereas VCUSA implemented those campaigns at the retail level, coordinating with authorized dealers for local dissemination and compliance."). Becker cannot have it both ways: he cannot allege VCNA and/or VCUSA are the "regional operational hub for marketing, [and] branding communications," are "responsible for U.S. sales, [and] marketing," "designed and executed North American advertising campaigns," and "disseminated those campaigns through U.S. dealer channels" while vaguely alleging jurisdiction over Volvo Cars AB based on the very same alleged activities.

The allegation Volvo Cars AB "pre-approves or requires approval of safety messaging disseminated in the Unites States, including the corporate safety tagline 'Safety first, always'" (SAC ¶ 17(c)) does not establish Volvo Cars AB has directed any activity at the *State of California*. As noted above, the SAC alleges "VCNA designed and executed North American advertising campaigns, while VCUSA disseminated those campaigns through U.S. dealer channels" and that both VCNA and VCUSA are located in Mahwah, New Jersey. *See* SAC ¶¶ 11, 12, and 24. Even if Volvo Cars AB was involved in developing general safety messaging and coordinated with its New Jersey affiliates on the issue, that does not support a finding Volvo Cars AB directed any activity "expressly aimed" at the State of California.[2]

The allegation Volvo Cars AB "derives hundreds of millions of dollars in annual revenue from California sales of Volvo vehicles—revenue that flows upstream to Volvo Cars AB through its wholly-owned U.S. subsidiaries," seeks to establish jurisdiction based on a "stream of commerce" theory and is insufficient, as a matter of law, to establish personal jurisdiction over Volvo Cars AB in the Ninth Circuit. *See, e.g., Holland*, 485 F.3d at 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (finding the "'placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state,' even if the defendant is "'aware[] that the stream of commerce may or will sweep the product into the forum state.'") (brackets in original).

---

[2] It is also worth noting here that the "support" for the safety message allegation in the SAC is a press release allegedly found on Volvo Cars AB's website relating to the Volvo EX30 vehicle model (a vehicle that is not at issue in the case). *See* SAC ¶ 17(c) and fn. 2. This fact further undermines basing jurisdiction on the allegation.

Becker has not and cannot establish Volvo Cars AB purposefully availed itself of the privilege of conducting activities in California or purposefully directed activities there.

**B.     Becker's Claims Do Not Arise Out of Or Relate to Volvo Cars AB's Alleged Forum Contacts.**

Even if the allegations in Paragraph 17 established purposeful availment or purposeful direction – which they do not – Becker's claims do not arise out of or relate to Volvo Car AB's alleged forum related activities because the SAC's jurisdictional allegations related to Volvo Cars AB neither establish a "direct nexus" (*i.e.,* causation) or "a close connection between contacts and injury." *Yamashita*, 62 F.4th at 505-06.

For example, Becker's allegation that Volvo Cars AB obtained a California Air Resources Board (CARB) certificate is entirely unrelated to Becker's claims in this action. The same is true relating to Becker's allegations Volvo Cars AB uses slogans, like "Safety first, always," or approves retailer advertising (which is untrue). While the SAC vaguely alleges that, at the time he leased his vehicle, Becker "was aware of and relied upon Volvo's pervasive representations of safety, reliability, and quality" and that Becker "understood these representations to promise that his vehicle would be safe and free from dangerous defects in materials and workmanship." (SAC ¶ 10), the SAC does not identify the specific statements Becker allegedly "was aware of and relied upon," who authored or made those statements, or whether Volvo Cars AB was involved, in any way, in such statements.[3]

Becker's claims do not arise out of or relate to Volvo Cars AB's alleged forum contacts and his claims should be dismissed.

**C.     Exercising Specific Jurisdiction Over Volvo Cars AB Would Be Unreasonable.**

The Court should also refuse to exercise jurisdiction because doing so would be unreasonable. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1998 (9th Cir. 1988). This is a particularly important analysis with respect to Volvo Cars AB, as the exercise of jurisdiction would be over a non-

---

[3] It is, of course, unsurprising Becker does not identify such alleged representations or rely on them as a substantive basis for his claims. Fundamentally, Becker's claims are concealment claims. If his claims relied on affirmative representations by one or more of the defendants, it would undermine his ability to maintain this matter as a class action (*i.e.*, if Becker's claims rely on such alleged representations, all class members would have had to have seen and relied on the same representations.).

1  U.S. corporation with no contacts in this forum. *See Asahi*, 480 U.S. at 115.

2  Courts consider seven factors to determine whether jurisdiction would be reasonable: "the extent of purposeful interjection; the burden on the defendant; the extent of conflict with sovereignty of the defendant's state; the forum state's interest in adjudicating the suit; the most efficient judicial resolution of the dispute; the convenience and effectiveness of relief for the plaintiff; and the existence of an alternative forum." *Sinatra*, 854 F.2d at 1198-99.

First, Volvo Cars AB has not purposefully (or otherwise) interjected itself into California, as discussed in detail above.

Second (and third), the Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field" and, further, that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching a long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114-15. These concerns weigh heavily against imposing the burdens of U.S. litigation on a foreign entity like Volvo Cars AB.

Fourth, although California would have an interest in adjudicating the claims of any California class members, that interest is satisfied here by virtue of jurisdiction over VCNA and VCUSA. And the state has no interest whatsoever in resolving claims by out-of-state class members against an out-of-state corporation like Volvo Cars AB.

Fifth (and sixth), there is no efficiency to be gained by exercising jurisdiction over Volvo Cars AB here, and, for that matter, no reason for Becker to demand it. For example, Becker does not allege and cannot reasonably argue VCNA or VCUSA would be unable to satisfy a judgment in his favor if he were to get one, for example.

Finally, while there may be no alternative U.S. forum that could exercise jurisdiction over Volvo Cars AB (for the same reasons it isn't subject to jurisdiction in California), it does not matter here. If Becker has any viable claims (in California or any other state), then he could prevail against VCNA or VCUSA without having to worry about jurisdictional problems.

### III. BECKER IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY.

If Becker requests jurisdictional discovery, the Court should deny it. The Ninth Circuit has held that where a plaintiff's claim of personal jurisdiction "appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011); s*ee also Boschetto*, 539 F.3d at 1020 (holding district court did not abuse its discretion in denying discovery where request was based on "little more than a hunch that it might yield jurisdictionally relevant facts"). Jurisdictional discovery here would only add cost and delay without changing the ultimate result.

### **CONCLUSION**

Becker cannot demonstrate facts sufficient to establish personal jurisdiction over Volvo Cars AB. All claims against it should be dismissed.

Dated: January 20, 2026

SHOOK, HARDY & BACON L.L.P.

By: /s/ Colm A. Moran
     Michael L. Mallow
     Colm A. Moran

     Attorneys for Defendant
     VOLVO CARS AB

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, I electronically filed Defendant Volvo Cars AB's Notice of Motion and Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction Under Rule 12(b)(2) with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

By: /s/ Colm A. Moran
Colm A. Moran