Michael L. Mallow (SBN 188745)
mmallow@shb.com
Colm A. Moran (SBN 202685)
cmoran@shb.com
SHOOK, HARDY & BACON L.L.P.
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

Attorneys for Defendant
VOLVO CARS AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT M. BECKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLVO CARS OF NORTH AMERICA, LLC, a Delaware limited liability company; VOLVO CAR USA, LLC, a Delaware limited liability company; and VOLVO CARS AB (publ.), a Swedish public limited company,<br><br>Defendants. | Case No. 3:25-cv-05331-MMC<br><br>**DEFENDANT VOLVO CARS AB's REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 27, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7 – 19th Floor |

# INTRODUCTION

Plaintiff Robert Becker ("Becker") asks this Court to exercise specific personal jurisdiction over Volvo Cars AB—a Swedish corporation with no operations, employees, or relevant contacts in California—based on emissions certifications, a Brand Book that does not relate to Volvo Cars AB or U.S. passenger-car sales, a decade-old global press release about dealership aesthetics, and a generalized safety tagline.

None of these theories satisfies the legal standard for exercising specific jurisdiction, which exists only where the defendant (1) purposefully directs activities at, or purposefully avails itself of the benefits of, the forum; (2) the plaintiff's claims arise out of or relate to those forum contacts; and (3) exercising jurisdiction is consistent with fair play and substantial justice. *See, e.g., Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017).

The CARB Executive Orders Becker references concern emissions compliance—not the alleged powertrain control defect at issue in this case—and thus do not establish forum contacts legally sufficient to find that Volvo Cars AB is subject to personal jurisdiction in California. The "Brand Book" is not Volvo Cars AB's publication and does not govern U.S. dealer advertising for passenger vehicles; it relates to the wholly separate commercial truck business of non-party AB Volvo. And neither a decade-old, global press release about dealership aesthetics (*e.g.*, that Volvo dealerships "will look and feel Scandinavian and truly Volvo") and service standards nor the generic safety tagline, "Safety first, always," creates forum-specific, claim-related contacts.

Even if the first two prongs for specific jurisdiction could be established (they cannot), exercising jurisdiction would be unreasonable for a foreign defendant with no relevant California contacts. California's interests and Becker's claims can be addressed through jurisdiction over Volvo Cars North America, LLC ("VCNA") and Volvo Cars USA LLC ("VCUSA").

Finally, Becker's request for jurisdictional discovery should likewise be denied. His five broad categories—decades of CARB materials, information related to the Brand Book, internal safety-messaging approvals, engineering approvals for the XC40 Recharge, and inter-corporate communications—are untethered to any theory that could establish purposeful forum conduct or

1

DEFENDANT VOLVO CARS AB'S REPLY IN SUPPRT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT
CASE NO. 3:25-CV-05331-MMC

relatedness. They would impose cost and delay while adding nothing material to the jurisdictional analysis.

Becker has not and cannot carry his burden on any prong of the specific jurisdiction test. The Court should grant Volvo Cars AB's Rule 12(b)(2) motion and deny jurisdictional discovery.

## ARGUMENT

**I.   VOLVO CARS AB IS NOT SUBJECT TO SPECIFIC JURISDICTION IN CALIFORNIA.**

Specific jurisdiction exists "only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comports with fair play and substantial justice, i.e., it [is] reasonable." *Williams*, 851 F.3d at 1023 (brackets in original). Additionally, specific jurisdiction must be "case-linked;" meaning it is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017).

Purposeful direction requires Becker to show Volvo Cars AB "engaged in significant activities within [California] or has created 'continuing obligations' between [it]self and the residents of [California]." *Gray & Co. v. Firsetenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). To establish purposeful availment, he must show Volvo Cars AB "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quotations omitted).

Finally, Becker must also show either (1) his claims 'arise out of' Volvo Cars AB's alleged forum related activities by establishing a "'direct nexus … between [a defendant's] contacts [with the forum state] and the cause of action;'" or (2) his claims are 'related to' Volvo Cars AB's activities by showing there is a "close connection between contacts and injury" meaning, for example, that "similar injuries will tend to be caused by those contacts." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504-06

2
DEFENDANT VOLVO CARS AB'S REPLY IN SUPPRT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT
CASE NO. 3:25-CV-05331-MMC

(9th Cir. 2023).

For the reasons discussed in Volvo Cars AB's motion (ECF 49) and below, Becker has not and cannot make the required showing.

### A. The CARB Executive Order Does Not Establish Jurisdiction.

Becker contends that the "single most important jurisdictional fact in this case" is that Volvo Cars AB has been issued CARB Executive Orders certifying Volvo passenger vehicles for sale in California. ECF 54 at 10. He argues that, because Volvo Cars AB must certify it is in "control of the vehicle specifications" as part of the CARB process—including the powertrain in his vehicle—the alleged defect in his powertrain renders the CARB certification itself a sufficient basis for specific jurisdiction. ECF 54 at 8. This argument fails.

The California Air Resources Board ("CARB") is "charged with protecting the public from the harmful effects of air pollution and developing programs and actions to fight climate change," including "requirements for clean cars and fuels…." *See* https://ww2.arb.ca.gov/about (accessed February 9, 2026); *see also Central Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F.Supp.2d 1151, 1156 (E.D. Cal. 2007) (noting that CARB has been, *inter alia*, tasked to "develop and adopt regulations that achieve the maximum feasible and cost-effective reduction of greenhouse gas emissions from motor vehicles"). Indeed, the very CARB Executive Orders Becker relies on in his opposition confirm this point. *See* ECF 54-3, Exs. 1-4 ("The following vehicles produced by the manufacturer ***are certified as zero-emission vehicles*** pursuant to Title 13, California Code of Regulations (13 CCR) 1962.2 and the incorporated test procedures. Production vehicles shall be in all material respects the same as those for which certification is granted." (emphasis added)); *see also* 13 CCR 1962.2 ("The Executive Officer shall certify new 2018 through 2025 model year passenger cars, light-duty trucks, and medium-duty vehicles as ZEVs, vehicles that produce zero exhaust emissions of any criteria pollutant (or precursor pollutant) or greenhouse gas, excluding emissions from air conditioning systems, under any possible operational modes or conditions.").

Becker's attempt to elevate emissions certifications into the "single most important" jurisdictional fact is misplaced for several reasons. To begin, CARB Executive Orders merely reflect

3

1  that Volvo vehicles satisfy universally applicable emissions standards—a mandatory prerequisite for
2  any manufacturer selling new vehicles in California. Such regulatory compliance does that establish
3  Volvo Cars AB has purposefully directed "significant activities within [California] or has created
4  'continuing obligations' between [it]self and the residents of [California]" relevant to this dispute. *See*
5  *Gray & Co.*, 913 F.2d at 760. Nor does it establish Volvo Cars AB purposefully availed itself of the
6  forum's benefits by committing an intentional act, aimed at California, that caused harm Volvo Cars
7  AB knows is likely to be suffered in California. *See Picot*, 780 F.3d at 1214. In fact, CARB ZEB
8  standards apply in jurisdictions other than California, including Colorado, Connecticut, Maine,
9  Maryland, Massachusetts, Minnesota, Nevad, New Jesey New Mexico, New York, Oregon, Rhode
10 Island, Vermont, Virginia, and Washington. *See* California Air Resources Board website:
11 https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-
12 californias-vehicle-regulations (accessed February 10, 2026).

13      Even more fundamentally, Becker's CARB theory fails under the separate and independent
14 requirement that his claims arise out of or relate to the forum contact. Specific jurisdiction must be
15 "case-linked," meaning the defendant's forum contacts must give rise to—or at minimum relate
16 closely to—the plaintiff's claims. *See Bristol-Myers*, 582 U.S. at 262; *Yamashita*, 62 F.4th at 504–06.
17 CARB Executive Orders do not satisfy this requirement because they concern only emissions-control
18 compliance, not the design, performance, or functioning of the allegedly defective powertrain. Put
19 another way, Plaintiff's claims have nothing to do with emissions. Thus, even if Volvo Cars AB
20 submitted emissions-related information to CARB, those submissions have no connection—direct or
21 indirect—to Becker's concealment claims concerning an alleged powertrain control defect. CARB
22 emissions certifications do not themselves create any risk of the alleged powertrain-control defect, do
23 not concern vehicle safety, and do not influence consumer expectations regarding powertrain
24 performance. They simply confirm that the emissions-control systems comply with California's (and
25 other states') environmental regulations. As a result, even the broadest articulation of relatedness
26 cannot transform an emissions certification into a forum contact that caused—or even relates to—
27 Becker's alleged damages asserted in this action.
28

4
DEFENDANT VOLVO CARS AB'S REPLY IN SUPPRT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT
CASE NO. 3:25-CV-05331-MMC

Accepting Becker's theory would stretch relatedness beyond recognition, effectively converting every CARB Executive Order into an all-purpose general jurisdictional hook for foreign manufacturers regardless of the claims asserted, the components at issue, or the nature of the alleged defect. That is exactly the sort of expansive, non-claim-specific approach that must be rejected. Because Becker's claims do not arise out of or relate to emissions compliance, the existence of CARB Executive Orders is irrelevant to the specific jurisdiction analysis.[1]

### B. The Brand Book is Irrelevant.

In the Second Amended Complaint ("SAC"), Becker alleges that the Brand Book governs "U.S. dealer signage, advertising layouts, and the use or placement of safety tag-lines" and requires that "'[p]romotion of all Volvo product and service offerings [to] always be Volvo-branded and follow guidelines outlined in this document.'" ECF 19 at ¶ 17(b). The Declaration of Magnus Ragnmark submitted with Volvo Cars AB's motion to dismiss, however, makes clear that Becker's foundational premise is incorrect. The Brand Book is not a Volvo Cars AB publication; it pertains to the commercial-truck business of AB Volvo, a separate and unrelated corporate entity. ECF 49-1 at ¶ 20. Mr. Ragnmark further confirms that Volvo Cars AB "does not review, approve or share in the cost of advertising" issued by Volvo passenger-car dealers in California. *Id.* at ¶ 17. Thus, the central document on which Becker relies does not involve the correct company, the correct industry, or advertising practices relevant to this case.

Moreover, even a cursory review of the Brand Book demonstrates it relates to AB Volvo's commercial truck business:

///

///

---

[1] Becker also claims Volvo Cars AB purposefully directed activity "toward the United States—and California specifically" in 2021 related to a NHTSA recall by making "the 'Field Action decision' to recall 2,278 XC40 Recharge vehicles (the same model Plaintiff leased) for defects in the Battery Energy Control Module causing loss of propulsion during driving." ECF 54 at 12. Like the CARB Executive Orders, this argument does not establish personal jurisdiction in this action. A NHTSA recall issued years before Becker leased his vehicle for a defect unrelated to his claims is irrelevant to the Court's jurisdictional analysis. And, in any event, "Volvo Cars AB [] does not mail recall notices to consumers in United States, including to consumers in the State of California, related to any alleged safety defect." *See* Declaration of Magnus Ragnmark, ECF 49-1 at ¶ 24.



*See, e.g.,* ECF 49-2 at 11.

Rather than acknowledge that the SAC attached a document unrelated to Volvo Cars AB, Becker pivots to a new theory. He now asserts the Brand Book is part of a "coordinated trademark governance structure" in which Volvo Cars AB allegedly participates as a co-licensee. ECF 54 at 5. He highlights language describing the Volvo Spread Word Mark as the "primary identification carrier for all Volvo entities." *Id.* at 14. From this, he concludes that because Volvo Cars AB uses the Volvo Spread Word Mark, it (and all Volvo passenger car dealerships in California) must also be bound by the Brand Book—despite undisputed evidence that the Brand Book governs branding for commercial trucks, not passenger vehicles.[2]

This argument fails both factually and legally. The shared use of a common trademark form—essentially, the stylized display of the word "Volvo"—does not transform a trucking-industry brand guide into a document regulating Volvo Cars AB or Volvo passenger-car dealerships in California. Licensing or coordinating over a trademark does not mean separate entities share marketing materials, advertising strategies, or product-line-specific brand manuals. Becker identifies no authority suggesting that the structure or use of a shared trademark amounts to jurisdictionally relevant conduct

---

[2] Becker also claims the Brand Book "is accessible through Volvo's proprietary dealer platform…." ECF 54 at 7. But, critically, the website (*i.e.*, the "proprietary dealer platform") Becker cites as support for this statement – https://relayto.com/explore/volvo-brand-book-3qkgv71mt76bf – is clearly not a Volvo website. *See* https://relayto.com/.

6
DEFENDANT VOLVO CARS AB'S REPLY IN SUPPRT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT
CASE NO. 3:25-CV-05331-MMC

1  for a corporate entity – here Volvo Cars AB – that neither authored, implemented, disseminated, nor
2  relied on the document at issue.

3  The reality is the Brand Book is not a Volvo Cars AB document; it relates to the
4  commercial-truck business of a separate corporate group; it plays no role in the marketing or sale of
5  Volvo passenger vehicles in California; and it bears no connection—direct or indirect—to the alleged
6  powertrain defect or the concealment claims Becker asserts. Because the Brand Book involves the
7  wrong entity, the wrong product line, and the wrong subject matter, it provides no basis for finding
8  purposeful direction, purposeful availment, or relatedness. It is irrelevant to the Court's specific
9  jurisdiction analysis.

10  **C.     Volvo Cars AB Does Not Direct Marketing at California.**

11  In his opposition, Becker relies on a December 15, 2014, press release he characterizes as
12  announcing a "global marketing strategy" for Volvo dealerships. ECF 54 at 13. He points to statements
13  that new dealerships would "look and feel Scandinavian and truly Volvo," existing dealerships would
14  receive aesthetic upgrades, dealer staff would undergo new customer-service training, that customers
15  would be assigned a "Personal Service Technician." *Id.* From these generalized, high-level statements,
16  Becker concludes that Volvo Cars AB "purposefully directed activities toward the forum state" and
17  is, therefore, subject to specific jurisdiction in California. ECF 54 at 14. His argument fails.

18  First, Becker's reliance on the press release is squarely contradicted by his own allegations. He
19  alleges that VCNA "serves as Volvo Cars AB's regional operational hub for marketing, branding
20  communications, and warranty program administration in the United States and Canada." ECF 19 at
21  ¶ 11. He further alleges that VCUSA "is responsible for U.S. sales, marketing, warranty
22  administration, and dealer communication." *Id.* at ¶ 12. And he alleges that "VCNA designed and
23  executed North American advertising campaigns, while VCUSA disseminated those campaigns
24  through U.S. dealer channels," with VCUSA coordinating with dealers on local implementation. *Id.*
25  at ¶ 24. These allegations foreclose any claim that Volvo Cars AB itself engages in U.S. marketing or
26  directs promotional activity toward California consumers.

27  The Ragnmark Declaration confirms the same point: Volvo Cars AB "does not engage in the

28

advertising or promotion of vehicles" in the United States and does not direct or approve California-specific marketing. ECF 49-1 at ¶¶ 18–19. A decade-old global press release describing general brand standards—standards that VCNA and VCUSA allegedly implement in North America under Becker's own pleading—does not establish purposeful direction or purposeful availment by Volvo Cars AB in California.

Second, Becker fails to satisfy the distinct requirement that his claims arise out of or relate to the conduct described in the press release. The statements he cites concern dealership aesthetics, customer-service processes, and general brand experience—not the design, functionality, or safety of the vehicle powertrain, and certainly not the alleged powertrain control defect that forms the basis of his claims. A dealership's "Scandinavian" look, the presence of a "Personal Service Technician," or staff training initiatives have no conceivable connection to whether Becker's vehicle contains a defect, let alone to any alleged concealment of such a defect.

The 2014 press release does not demonstrate purposeful direction toward California and does not relate, in any meaningful way, to Becker's claims. It cannot support the exercise of specific personal jurisdiction over Volvo Cars AB.

**D.   "Safety First, Always" Does Not Establish Jurisdiction.**

Finally, Becker relies on the tagline "Safety first, always," asserting it reflects "a corporate safety message Volvo Cars AB created and that its subsidiaries deployed in marketing all Volvo vehicles, including the Class Vehicles." ECF 54 at 15-16. But even if the slogan originated with Volvo Cars AB and even if its affiliates in New Jersey later used it in the United States, Becker has not shown—nor can he show—that this general branding message establishes specific jurisdiction over Volvo Cars AB.

To begin, a global safety slogan does not constitute purposeful direction toward California. Volvo Cars AB has not targeted California consumers, engaged in California-specific promotional activity, or directed this tagline to the forum in any way. General brand messaging disseminated worldwide, or by U.S. subsidiaries acting in their own regional marketing roles, is insufficient to establish personal jurisdiction.

The relatedness requirement is independently fatal to Becker's position. Becker does not explain how a high-level slogan about safety that is clearly puffery bears any connection to his claims, which are grounded in the alleged concealment of a powertrain-control defect. *See* ECF 19 at ¶ 6. More importantly, Volvo Cars AB's opening brief specifically argued that Becker never identifies what safety-related statements he actually saw or relied upon, who made them, or whether Volvo Cars AB had any involvement in them. ECF 49 at 12. Becker's opposition does not address this deficiency at all. The SAC offers only a vague allegation that Becker was "aware of and relied upon Volvo's pervasive representations of safety, reliability, and quality" when leasing his vehicle. ECF 19 at ¶ 10. That generalized assertion, untethered to any specific representation or any conduct by Volvo Cars AB, cannot satisfy the requirement that Becker show either a direct nexus between the Volvo Cars AB's forum contacts and his alleged injury or at least a close factual connection sufficient to satisfy the "relates to" standard.

Volvo Cars AB's purported involvement in developing or coordinating general safety messaging does not constitute purposeful direction toward California, and it bears no relationship to Becker's concealment-based claims. The "Safety first, always" tagline therefore provides no support for the exercise of personal jurisdiction.

### E.     Exercising Specific Jurisdiction Over Volvo Cars AB Would Be Unreasonable.

The Court should also decline to exercise jurisdiction because it would be unreasonable under the *Sinatra* factors, especially as applied to Volvo Cars AB—a foreign corporation with no relevant California contacts. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1998 (9th Cir. 1988)

The Supreme Court has stressed that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field" given the substantial burdens imposed on foreign defendants. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114-15 (1987). California's interest in adjudicating the claims is already fully served through jurisdiction over VCNA and VCUSA. Exercising jurisdiction over Volvo Cars AB would not improve Becker's ability to obtain relief (*e.g.*, there is no allegation that VCNA or VCUSA could not satisfy any judgment). And even if no U.S. forum could exercise jurisdiction over Volvo Cars AB, it is immaterial because

1  any viable claims can be pursued fully against VCNA or VCUSA without raising jurisdictional
2  concerns.

3  **II.    BECKER IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY.**

4  Becker seeks jurisdictional discovery in five broad areas: (1) all CARB applications,
5  correspondence, and reports related to Volvo vehicles since 1984; (2) the complete Brand Book and
6  evidence of its distribution to California dealers; (3) documents identifying who at Volvo Cars AB
7  approves U.S. safety messaging; (4) specification-change approvals and field-fix authorizations for
8  the XC40 Recharge; and (5) communications between Volvo Cars AB and its U.S. subsidiaries
9  regarding the alleged Powertrain Control Defect. ECF 54 at 21–22.

10  None of these topics would produce evidence relevant to the jurisdictional inquiry. As
11  explained above, the CARB Executive Orders do not support specific jurisdiction over Volvo Cars
12  AB, and discovery spanning more than four decades—covering vehicles unrelated to this case—is
13  wholly unreasonable. The same is true of Becker's requests regarding safety messaging, specification
14  changes, field-fix authorizations, and communications about the alleged defect. None of these subjects
15  could show that Volvo Cars AB purposefully directed conduct toward California or that Becker's
16  claims arise out of any such conduct. And the Brand Book has no connection to Volvo Cars AB or to
17  Volvo passenger-car dealers in the United States.

18  Jurisdictional discovery here would serve only to increase cost and delay without altering the
19  outcome. The Court should deny Becker's request.

20  **CONCLUSION**

21  Becker cannot demonstrate facts sufficient to establish personal jurisdiction over Volvo Cars
22  AB. All claims against it should be dismissed.

23  Dated: February 10, 2026                    SHOOK, HARDY & BACON L.L.P.

25                                              By: /s/ Colm A. Moran
                                                    Michael L. Mallow
26                                                  Colm A. Moran
                                                    Attorneys for Defendant
27                                                  VOLVO CARS AB

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, I electronically filed Defendant Volvo Cars AB's Reply is Support of Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction Under Rule 12(b)(2) with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

By: /s/ Colm A. Moran
Colm A. Moran

11
DEFENDANT VOLVO CARS AB'S REPLY IN SUPPRT OF MOTION TO DISMISS SECOND
AMENDED COMPLAINT
CASE NO. 3:25-CV-05331-MMC